THE ARCTIC FIRE INSURANCE COMPANY, Respondent, *v.* JEREMIAH AUSTIN, President, etc., Appellant.

The interpretation of a contract between a towing company and a master and owner of a boat to be towed, and what are the legal relations between the parties and the relative rights and obligations resulting therefrom, are questions of law for the court; and a submission thereof to a jury is error.
The captain of a steam tug having a canal boat in tow, under a contract by which the boat is to be towed at the risk of its master and owner, is not the master of the boat in tow, and he has not such entire charge and

control thereof that the master and crew of said boat can be deemed for the trip and service the servants and agents of the owner of the tug, so as to make such owner chargeable with negligence, because of an omission to take proper precautions for safe navigation, such as putting out lights upon the boat, etc.

Nor does such a contract constitute the owner of the tug a common carrier or make him liable for the wrongful or negligent acts of those in charge of the boat. The master of the boat is still under obligations to use every necessary precaution, and to do whatever is necessary and customary upon his boat to guard against the perils of navigation; and if in the course of the service called for by the contract the boat receives an injury caused in part by the neglect of those in charge of the tug, but to which the neglect of the master of the boat to take such precautions has contributed, no recovery can be had against the owner of the tug.

Where a ship or boat is being towed astern of the towing vessel, and is only attached by a hawser, if her helm can be made available, it is the duty of the owner of the vessel in tow to have a competent man at the helm, and a competent watch or outlook on deck, and when necessary to indicate and warn other vessels of her position, to have a proper light displayed.

*Quære*, whether *quoad* innocent third persons not connected with the tow sustaining injury by reason of the neglect of the master of the vessel in tow to put out proper lights, when moving upon a public navigable stream in the night time, the owner of the towing vessel can be held responsible.

Where it appears that a vessel is owned by the master in command, and that the cargo is owned by another, the legal presumption is that the former is a common carrier for hire, responsible for the carriage and delivery of the cargo to the consignee.

The possession of the carrier is that of the owner of the freight, and whatever is done by the former in the course of his service and bailment, he does as the agent and representative of the latter. If therefore loss or damage results to the cargo, to which the carrier by his wrongful or negligent acts has contributed, the owner is deprived of any remedy over against a third person; he can only recover upon proof that the loss was occasioned solely by the wrongful acts or negligence of such third person.

Accordingly, *held*, where a canal boat in tow was run into and sunk by another tug owned by the same line which owned the towing tug, that the owner of the cargo could not recover for its loss, it appearing that the omission to display proper lights upon the canal boat contributed to the injury.

The cases holding that a passenger in one conveyance may recover against the owner of another from the negligent management of which injury to the passenger has happened, although the carrier with whom he is traveling is guilty of contributory negligence, distinguished.

The admiralty rule which divides the whole loss or damage both to ships and cargo, between two vessels by whose concurrent negligence the loss or damage has been occasioned, has no application in common law courts.

*Arctic Fire Ins. Co.* v. *Austin* (3 Hun, 195), reversed.

(Argued February 22, 1877; decided May 22, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 3 Hun, 195.)

This action was brought against defendant as president of the Albany and Canal line of tow-boats, a joint stock association engaged in towing canal boats between Albany and New York, to recover damages for the loss of a cargo of corn, upon which plaintiff had an insurance, which loss was alleged to have been occasioned by the negligence of defendant's employees.

The cargo was on board the canal boat, J. L. Parsons, which was being towed from Albany to New York by a steam tug belonging to defendant's company; it was sunk by a collision with another tug owned by the same company. The contract for the towage contained a clause to the effect that the towing should be at the risk of the master and owner of the canal boat.

The further facts appear in the opinion.

*Samuel Hand* and *Robert Benedict*, for the appellant.

*George W. Parsons*, for the respondent. The exposure being great, defendant should have used extraordinary care in navigating its tow-boats. (*Fero* v. *Buff.*, etc., R. R. Co., 22 N. Y., 209; *Johnson* v. *H. R. R. Co.*, 20 id., 75; *Phila. etc., R. R. Co.*, v. *Kerr*, 33 Md., 331; *Chamberlain* v. *Ward*, 21 How. [U. S.], 570; The Syracuse, 9 Wal., 672; The City of Paris, id., 634; 1 Pars. Mar. Law, 197, 198.) The questions of fact were fairly submitted to the jury. (*Blanchard*

v. *N. J. Steamboat Co.*, 59 N. Y., 296; The Dexter, 23 Wal.
74.) The stipulation contained in the receipt given by
defendant to the captain of the canal boat for the expense
of towing, did not exempt defendant from liability for gross
negligence. (*Alexander* v. *Greene*, 7 Hill, 533; *Wells* v. *St.
Nav. Co.*, 8 N. Y., 375.) Canal boats and barges are con-
sidered as being under the control of the tug. (*The John
Counter* v. *Ad. Ct. L. Case* [18 L. R.], 553; The Express, 1
Blatch. [C. C.], 365; *The Steamboat New York* v. *Rea*,
18 How., 223; The R. B. Forbes 1 Sprague, 328;
*Sturgis* v. *Boyer*, 24 How. [U. S.], 122, 125.) It was
entirely immaterial whether there was any contributory neg-
ligence chargeable to the canal boat. (*Chapman* v. *N. H.
R. R. Co.*, 19 N. Y., 341; *Cosgrove* v. *N. Y. & N. H.*, etc.,
*Co.*, 20 id., 492; *Brown* v. *N. Y. C. R, R. Co.*, 32 id., 597,
601–2; *Webster* v. *H. R. R. R. Co.*, 38 id., 260; *Barret* v.
*Third Ave. R. R. Co.*, 45 id., 628; *The Enterprise*, 3 Wal.
Jr., 58; *The Washington* v. *The Gregory*, 9 Wal., 513; *The
New Philadelphia*, 1 Black. [S. C.], 476; *The Steamboat
Atlas The Phoenix Ins. Co.*, U. S. S. C., Nov., 1876; *Silliman
Lewis*, 49 N. Y., 384; *Mott* v. *H. R. R. R. Co.*, 8 Bosw.,
345; *Metcalf* v. *Baker*, 2 J. & S., 12; 52 N. Y., 649; *Mil-
ton* v. *H. R. St'bt Co.*, 4 Tr. App., 232; 54 Barb., 562.)
The law required defendant to keep a look-out on the for-
ward deck of its boat. (1 Pars. Mar. Law, 198, 199; *New-
ton* v. *Stebbins*, 10 How. [U. S.], 607; *Chamberluin* v. *Ward*,
21 id., 548; *Haney* v. *Balt. St. Packet Co.*, 23 id., 293, 294;
*Genesee Chief* v. *Fitzhugh*, 12 id., 443; *St. John* v. *Paine*,
10 id., 558; *The Ottawa*, 3 Wal., 268; *The Northern Indi-
ana*, 3 Blatch., 92; *Steamboat New York* v. *Rea*, 18 How.
[U. S.], 225; *N. Y. & B. Tr. Co.* v. *Phila.*, etc., *Now. Co.*,
22 id., 471; *Goeslee* v. *Shute's Exr.*, 18 id., 463; *The
Ariadne*, 13 Wal., 475; *The Argus*, Olcott, 315.) Plain-
tiff's negligence to preclude a recovery must be such that
defendant could not by ordinary care have avoided the con-
sequences. (*Bridge* v. *G. J. R. W. Co.*, 3 M. & W., 244;
*Butterfield* v. *Forester*, 11 East, 60; *Davis* v. *Mann*, 11 M.

& W., 545; *The Dexter*, 23 Wal., 74; Sedg. on Dam., 470; *Marriott* v. *Stanley*, 1 M. & G., 568; *Centre* v. *Finney*, 17 Barb., 94; 2 Seld., note, 44; *Gen. St. Nav. Co.* v. *Tounkins*, 4 Moore P. C., 314; *Tuff* v. *Warman*, 2 C. B. [N. S.], 740; 20 N. Y., 75; *L. & N. R. R. Co.* v. *Jerry Collins*, 5 Am. L. R., 265; *Short* v. *Knapp*, 2 Abb. Pr. [N. S.], 241; *Haley* v. *Earle*, 30 N. Y., 208; *Austin* v. *N. J. St'bt. Co.*, 43 id., 82; *N. J. Ex. Co.* v. *Nichols*, 4 Vroom, [N. J.], 434; *Johnson* v. *H. R. R. R. Co.*, 20 N. Y., 65; 10 How. [U. S.], 558, 585, 586; 12 id., 443; *Lack.*, etc., v. *Chenoworth*, 6 Am. L. R. No. 2, Am. Series; *Newton* v. *Stebbins*, 10 How., 586; *Trow* v. *Vt. C. R. R. Co.*, 24 Vt., 487; *Button* v. *H. R. R. R. Co.*, 18 N. Y., 256; *Dowell* v. *St. Nav. Co.*, 5. E. & B., 195; *Savage* v. *Corn Ex. Ins. Co.*, 36 N. Y., 658, 659; *Willis* v. *L. I. R. R. Co.*, 34 id., 670.)

ALLEN, J.   The canal boat J. L. Parsons, laden with corn owned and shipped by White's Bank of Buffalo, while in tow of the steam tug McDonald, owned and used in the towing of boats and barges by a joint stock company, of which the defendant was president, on her passage down the Hudson river, was sunk by a collision with a barge in tow of the steam tug Austin, owned by and in the service of the same company, bound up the river, nearly opposite West Point, and between that point and Magazine Point, a few rods above, and the boat and cargo were wholly lost. The plaintiff had insured the cargo of corn, and having paid the loss brings this action, seeking to charge the towing company for negligently suffering or causing the collision and consequent loss and damage.   The right of the plaintiff as the successor in interest of the owner of the cargo to maintain the action, if the loss was occasioned by the negligent or wrongful acts of the servants and agents of the towing company defendants, is not disputed.   The owner of the cargo was not the owner of the sunken boat.   That was owned by the master in command, who must be assumed to have been a common carrier for hire, responsible for the

safe carriage and delivery of the corn to the consignees.
Such is the legal presumption upon proof of the ownership
of the boat by the master in command, and the ownership
of the cargo by other parties.   Courts will not, in the absence
of evidence, speculate upon the possible existence of other
relations than that of bailor and bailee between the shippers
of the cargo and the master and owner of the carrying
vessel, or that the shipper had chartered and manned the
boat, thus assuming the control, and, *pro hac vice*, becoming
the owner and sponsor for the negligence of the master and
crew.   It was assumed upon the trial, and so held by the
learned judge presiding, that the acts and neglects of the
master and crew in charge of the boat Parsons, if they con-
tributed to the loss, would bar a recovery by the plaintiff.
For all the purposes of disposing of this appeal, it will be
assumed that the disaster was imputable to the faults and
neglects of the master and crew of the canal boat, or of
those in charge of one or both of the steam tugs, or of the
concurrent acts of all contributing to the same result.
Although there was an attempt to prove that the collision
occurred at or about the break of day, the weight of the
evidence is that it was before daylight, and while the dark-
ness of the night continued.   It was at a point in the river
which was in the shadow of the high banks upon either side,
which obscured objects upon the surface of the water, mak-
ing them, if not invisible, difficult to be seen, and increasing
the hazard of the navigation.   The boat Parsons was the
outer boat upon the larboard side of the front or head of
three tiers of four boats each, the boats of each tier being
lashed together and towed by a hawser astern of the steam
tug McDonald, which furnished the motive power.   There
was no watch upon the canal boat, nor light upon her, nor
was there any light visible from the boats in tow to indicate
the presence of a hawser-tow, or that boats were astern or
following the tug.   There was no signal given from the
McDonald on her passing the Austin to indicate that there
were boats in tow astern of her, as was sometimes given.

The tugs passed each other on the customary side, each passing to the right, at or near the middle of the river, the testimony leaving it somewhat doubtful whether the McDonald was or was not a little to the west or right of the middle. The Austin, immediately on passing the McDonald, changed her course by starboarding her helm and heading more to the left or west, by which a barge propelled by and lashed to her larboard side was brought directly foul of the Parsons, causing the disaster and loss. There was no lookout or watch on the Austin, except in the pilot-house, and the evidence was conflicting whether that was the proper or the best position from which to discover approaching objects or obstructions in or upon the surface of the water ahead of the vessel. The learned judge submitted to the jury the question as one of fact, whether the captain of the tug was also the captain of the canal boat, that is, whether the canal boat was subject to the orders of the captain of the tug-boat, and as such omitted to take the proper precautions for the safe navigation and for the safe delivery of the freights, " such, for example, as directing and insisting upon a light being put out," and charging them that if they found that question in the affirmative the plaintiff would be entitled to their verdict, and they need not consider any other question in the case. The jury were also charged that if any negligence of the captain of the canal boat co-operated with any negligence of the defendant's agents to produce the collision, the plaintiffs could not recover. In effect, the instructions to the jury were, that if they found that the master and crew of the canal boat had no duties to perform in that capacity, or as the servants and agents of the owners of that boat, but that for the trip and service, and while being towed by the McDonald, they were the servants and agents of the owners of the steam-tug, subject to the control and directions of the master of the tug who was in actual charge as the servant of the defendant of the whole flotilla, they should find a verdict for the plaintiff by reason of the omission to put a light upon the canal boat as a necessary precaution for her safe transit.

That the absence of the light upon the Parsons was one of the primary procuring causes, if not the sole cause of the disaster, might be inferred from the evidence, and the jury may have so found. Had a light been exhibited upon the bow of that boat, the fact that the McDonald had boats and barges in tow by a hawser, would have been manifest, and the position of the tow would have been visible from the Austin and the collision avoided. The latter boat would not have been induced, by an apparent absence of all other vessels, to change her course so as to come in contact with the Parsons or any part of the tow of the McDonald. The verdict may, therefore, have passed against the defendant upon the finding of the jury, that the omission to put out a light was negligent, with the additional fact, that the captain of the McDonald was in command of the Parsons, and that the master and crew of the latter were subject to his orders, and were his subordinates for that service and thus the servants and agents of the towing company, acting under the immediate directions of a superior agent, the master of the steamtug. The interpretation of the contract between the towing company and the master and owner of the boat to be towed, and the legal relations between the parties, and the relative rights and obligations resulting therefrom, were for the court and not for the jury. They were questions of law to which the judge should have responded, and not of fact to be answered by the jury, and their submission to the jury was error for which the judgment must be reversed, unless the error was immaterial, and this can only be upon the ground that upon the undisputed evidence the tow-boat company were clearly liable for the loss; that the want of skill and care of the servants and agents of the defendants in propelling the Parsons, was the proximate cause of, or contributed to the loss, and that the collision was, without fault, on the part of the shipper of the corn, his servants or agents, or any for whose acts he is responsible.

The verdict and judgment cannot be sustained in the face of the erroneous instructions to the jury upon a general charge

of negligence in the conduct and management of the tow by the servants and agents of the defendant, but it must be upon the specific act of negligence for which the defendant may have been held by the jury under the charge, viz : The right to have a light upon the Parsons, and the towing of her through the night without a proper light upon her, or some part of the flotilla to signal the presence of the boats that were in tow by the McDonald. There was evidence for the jury of other acts of negligence, and omissions of duty by the masters of the two steam tugs, but the evidence was not of that conclusive character as to prove the alleged negligence beyond all question, such that a verdict for the defendant would have been against evidence. Had the want of a light at the head of the tow been out of the case, and all the other acts relied upon been proved a verdict for the plaintiff could not have been directed by the court. The defendant would have been entitled to the verdict of the jury whose province it would have been to pass upon the weight of the evidence, and draw the proper inference from it. The most that can be claimed in behalf of the plaintiff is that there was competent evidence tending to prove a custom to indicate to passing vessels the presence of a hawser-tow, by whistles from the steam tug, and that such signal was not given from the McDonald to the Austin ; that the vessels were not in a proper position for safety, each being too far to the left of the track in which they should have been ; that the Austin had no proper watch or look out on deck or at her bow , that the master and pilot of the Austin had reason from their knowledge of the course and amount of business at that season of the year to suppose that the McDonald had boats in tow astern, and that therefore it was careless and reckless to give the steam tug a direction after passing the McDonald which would bring her or her attendant boats or barges in collision with a hawser tow, if one there was.

But upon all these matters there was conflicting evidence, and upon all the evidence the fact of negligence was to be inferred, and it cannot be said that the evidence justified a

direction of a verdict for the plaintiff, or would permit this court to say that the erroneous rulings could not have prejudiced the defendant, for the reason that the verdict must necessarily have been for the plaintiff upon the evidence of and clearly proven acts of negligence other than the omission of a light upon the tow. Negligence is ordinarily a question of fact, and it is only in very exceptional cases that it can be adjudged as a necessary legal conclusion from the facts proved. The fact that the steam tug furnishing the motive power undertook to propel the canal boat " at the risk of the master and owners of" the latter, from Albany to New York, did not dispossess the master and crew of the canal boat, deprive the master of his command, or relieve him from an obligation to use every necessary precaution, and do whatever was necessary to guard against the perils of the navigation, and ensure a safe transit. Neither did it constitute the proprietors of the tow-boat common carriers, or make them liable for the wrongful or negligent acts of those in charge of the canal boat within the doctrine of *respondeat superior*. Under a contract for a service like that undertaken by the defendant's company the law imposes certain duties as well upon the master of the canal boat as upon the master of the towing vessel. Each vessel, the towed and the towing, is under an implied obligation to use proper skill and diligence in the care and management of the respective vessels, and not to increase the risks or peril of the service by neglect or misconduct, and if in the course of the service the one receives injury caused in part by the neglect of the other boat, to which the injured vessel has by neglect or fault contributed, there can be no recovery. A boat or vessel may be so attached to the propelling vessel that she is helpless, and the master and crew can do nothing, and are called upon to do nothing to avoid injury from other vessels, or arrest peril from any cause. She may by reason of her position in the tow be wholly within power, and subject to the control of those in charge of the towing boat. (*Sturgis* v. *Boyer*, 24 How. [U. S.], 110.)

In the case cited the tug and the tow were under the command of the master of the tug, and the master and crew of the vessel in tow had left her. But when a ship or boat is towed astern of the towing vessel, and only attached by a hawser, if her helm can be made available the owner of the boat is bound to have a competent man at the helm, and a competent watch or outlook on deck, and if so situated by reason of being lashed to other boats that the helm cannot be made available to give direction to the boat, and a watch is unnecessary, a light in a proper position to indicate her situation, and warn other vessels of her position may be necessary. It is an act of negligence for a vessel to lie at anchor in the night without proper lights, and the duty is none the less to exhibit the statutory or customary lights when being propelled by another vessel. (*Sproul* v. *Hemmingway*, 14 Pick., 1; *The Julia*, 2 Lush., 231; *Sturgis* v. *Boyer, supra.*)

By the contract the defendant's company agreed to furnish the motive power, and to take the boat Parsons in tow and propel her in the usual and customary way to New York, to furnish a steam tug suitable and proper for the service, well and properly manned and fitted, and for the exercise of skill and care in the use of the motive power in the prosecution and accomplishment of the voyage, and the general conduct and management of the tow. The master of the Parsons did not surrender, nor did the defendant assume the possession or control of that boat, she continued manned by the servants and agents of hir owners, and the defendant did not assume to furnish a proper crew, or to see that she was properly manned or served. The masters and owners of the canal boat undertook for its proper care and management, and the use of proper skill and the exercise of all precautions and the doing of whatever was customary and necessary to be done upon that boat for the safety of the tow. It was the clear legal duty of the master and owners of the Parsons to have a light upon the boat during the darkness of the night, to prevent a collision with other vessels, and the

neglect of that duty would bar a recovery by the owners for a loss arising from a collision to which the want of such light contributed, either against a colliding vessel or the towing company. It would be a clear case of contributory negligence which would bar an action. (*The Unity*, Swabey's R., 101; *Haley* v. *Earle*, 30 N. Y., 208; *Hoffman* v. *Union Ferry Co.*, 47 N. Y., 176.) Whatever may have been the duty or the liability of the defendant to the public or innocent third persons sustaining damage from a collision caused by a want of a light upon the boats in tow, it is very evident that there was no duty owing by the defendant to the owner of the canal boat to compel the carriage of proper lights. It may be that *quoad* innocent third persons not connected with the tow, the defendant might be charged with negligence for moving boats and vessels along and over a public navigable stream in the night without proper lights, and that both vessels owe a duty in that respect to the public and to third persons, but it by no means follows that either can complain of the other that the duty has been neglected. Had the owner of the Parsons sued for the loss of the boat, or as a common carrier of the corn, and as bailee brought an action for its loss, proof of negligence on the part of the master and crew of the carrying vessel would defeat either action. A party suing for negligence must himself be free from fault. The question then is whether the owner of the freight can recover for losses caused by the concurrent negligence of the carrier, and the parties sought to be charged. If the carrier was without fault and the cargo was lost through the want of care or skill or the wrongful act of the towing company, an action would lie at the suit either of the carrier as the bailee or the owner, and a recovery by either would bar an action by the other. But if the views of the learned court below, at General Term, prevail, the defences to the two actions might not be identical. One defence fatal to the action by the carrier would not be admissible in the suit by the owner, and yet while a recovery by the carrier would relieve him from his liability, it would be

for the benefit of the owner who would be entitled to it. The law would not distinguish between him as a carrier absolutely responsible for the safe delivery of the cargo and a bailee of the owner bringing the action for his benefit, but whatever defence would avail against him as carrier would be equally available against him as representing the owner. It would be an anomaly if the law giving an action to either of the two, the bailor and bailee, should make it to depend upon different principles when brought by one of the two.

The possession of the carrier is that of the merchant shipper; he is the bailee, and *quasi* the agent of the shipper. Whatever he does in the course of the service and bailment he does as the agent and representative of the owner, and if so, all the consequences of the negligence of the carrier will be visited upon the owner of the freight to the extent of depriving him of any remedy over against a third party for losses to which the carrier, by his wrongful or negligent act, has contributed. The general rules as to contributory negligence as a defence will apply to the owner of the cargo.

The precise question was before the court in *Vanderplank* v. *Miller* (1 M. &. M., 169), and *Simpson* v. *Hand* (6 Wharton, 311), and in both instances it was held that the rule that, in case of a loss from mutual negligence, neither party could recover in a court of common law, governed the case of shippers of goods on board vessels which have come into collision, to the injury of the goods, as well as the owners of the vessels themselves. Ch. J. Gɪʙsoɴ, in the case last cited, supports the decision upon reason, as well as authority. He distinguishes the cases from actions for injuries to persons, passengers by stage coach or other conveyance. He says: "There is at least privity of contract betwixt a merchant and his carrier; and the former, when he commits the management and direction of his goods to the latter, giving him, as he does, authority to labor and travail about the transportation of them, necessarily constitutes him, to some extent, his agent; and this inference is sanctioned by judicial authority," and cites *Beedle* v. *Morris*

(Cro. Jac., 224), as establishing the agency.    Again he says:
" A carrier is liable to his employer at all events; and to
make his associate in misconduct answerable for all the con-
sequences of it would make one wrongdoer respond, in case
of another, for an injury that both had committed.    It is
more just that the carrier should answer to his employer,
rather than one in whom the employer had reposed no con-
fidence."

The same principle governed in *Smith* v. *Smith* (2 Pick.,
622), where the owner, suing for an injury to a horse
received from a nuisance in the highway while in possession
and being used by one who had hired him, was defeated of
his action by reason of the negligence of the bailee in pos-
session.    It needs no argument to show that there is no
analogy between the cases in which passengers in one con-
veyance have been held entitled to an action against the
owner of either or both of the vehicles, from the negligent
management of which injury has been received.    There is
no bailment and no agency in those cases.    There is no abso-
lute obligation of the carrier to deliver his passenger safely,
and the carrier cannot maintain an action for an injury to
the passenger.    The right of action is the same against both
wrongdoers, and rests upon the same foundation of wrong-
doing; and, if it is concurrent, although not in intentional
concert, the injured party may recover of either.    (*Colegrove*
v. *N. Y. & N. H. R. R. Co.*, 20 N. Y., 492; *Webster* v.
*Hudson R. R. R. Co.*, 38 id., 260; *Chapman* v. *N. H.
R. R. Co.*, 19 id., 341.)    The plaintiff is of course entitled
to his action against the owner of the Parsons, who had
undertaken to convey the property to the place of its desti-
nation.

The principle, as now applied, is not inconsistent with the
rule in admiralty, which divides the whole loss including
with the damage to the ships, the loss of the cargo, between
the two vessels by whose concurrent negligence the loss has
been occasioned.    The doctrine was applied by the Supreme
Court of the United States, at the late October term of that

court, in the *Steamboat Atlas* v. *Phœnix Ins. Co.*, in which the opinion was pronounced by Mr. Justice Clifford. The rule as recognized and applied in admiralty is there stated, with the reasons and the authorities upon which it rests. It grows out of the well-established principle—different from that which prevails at common law—that where there is a loss or damage to ships and vessels, the subject of admiralty jurisdiction resulting from the concurring negligence or wrong doing of two parties, the entire loss is divided between the guilty parties, and each is charged with the one-half, irrespective of the degree of fault of each. At common law there could be no recovery by either, nor any action maintained in such a case. But the principle conceded, that concurrent wrong-doers must jointly bear the entire loss occasioned by their misdeeds, although they do not act in concert; and it follows that, in the case of two vessels sustaining injury, the cargos of which also suffer damage, it is the aggregate damage to ships and cargo that must be divided. If not so, one losing a valuable cargo, for which it is liable as a carrier, will be made to bear a disproportionate share of the loss, although the loss may be attributable to it only in a very slight degree. The rule but gives effect, and carries to its necessary results the equitable rule of apportioning the loss in such cases between the parties in fault. Judge Clifford relies upon this principle, and upon the decisions of the admiralty courts, in its application to support the decision in the case cited. He does not interfere with the common-law rule, or quote common-law decisions upon this branch of the case. The common-law rule as established in *Vanderplank* v. *Miller*, *Simpson* v. *Hand* and other cases, applied in admiralty, would overthrow the governing principle of that jurisdiction dividing the loss between those in fault, while, to apply the doctrine of *The Atlas* v. *Phœnix Ins. Co.*, and the cases quoted by Judge Clifford in actions at law, would overthrow the common-law rule forbidding an action by either, when both parties have contributed to the loss.

It would be, as said by Judge GIBSON, to charge the whole loss upon the one to the case of the other of the wrong doers. The plaintiff can only recover upon proof that the loss was occasioned solely by the wrongful acts or the negligence or unskillfullness of those in charge of one or both of the steam tugs, without fault on the part of the master or crew of the Parsons, and that question must be submitted to a jury.

The judgment must be reversed, and a new trial granted.
CHURCH, Ch. J., FOLGER and EARL, JJ., concur.

MILLER, J., dissents; ANDREWS, J., does not vote; RAPALLO, J., absent.

Judgment reversed.