performance. It now appears that defendant promptly and complete-
ly fulfilled his part of the agreement so for as he could without fulfill-
ment by the other party, and elected to rescind the contract only after
Eirick had unreasonably and without excuse refused to do that which
he had agreed to do.

Judgment affirmed, with costs. All concur.

---

### ROCKLAND LAKE TRAP ROCK CO. v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Second Department. November 21, 1906.)

NEGLIGENCE—IMPUTED NEGLIGENCE—COLLISION WITH VESSEL IN TOW—NEGLI-
     GENCE OF TUG.
     In case of collision of a vessel with a tow lashed to the side of a sea-
     worthy and competently manned tug, the negligence of the tug is not im-
     putable to the tow.

Appeal from Trial Term.

Action by the Rockland Lake Trap Rock Company against the
Lehigh Valley Railroad Company. From a judgment dismissing the
complaint on the merits, on a verdict, and from an order denying a
motion for new trial on the minutes, plaintiff appeals. Reversed and
new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, HOOK-
ER, RICH, and MILLER, JJ.

Amos Van Etten, for appellant.

William Lloyd Kitchel (Allan McCulloh, on the brief), for respond-
ent.

WOODWARD, J. A single question is presented for review upon
this appeal, and that involves the charge made to the jury. The action
was brought to recover damages for injuries sustained by a scow in
a collision with a steam tug owned by the defendant. The plaintiff
was the owner or charterer of the scow Helen on the 7th day of June,
1904, and on that date the scow was taken from Newtown creek by the
tug Ira M. Hedges. The Helen was on the starboard side of the tug,
and the scow Hastings Paving Company was on the port side of the
tug, both being lashed to the tug, and, so far as appears from the evi-
dence, these two scows were owned by different parties. While the
tug with the two scows was in the center of the North river, some-
where in the vicinity of Barclay street ferry, the defendant's steam
tug Slatington collided with the plaintiff's scow, damaging it to an
extent which is not in controversy; the only question being the defend-
ant's liability. There was some evidence in the case tending to show
that the accident was in part due to the negligence of the tug Hedges,
and the learned court in its charge to the jury said:

"I submit the question of negligence to you whether the Hedges was guilty
of contributory negligence as matter of fact. * * * I charge you as matter
of law that, if the master of the tug Hedges was careless, the plaintiff here
is charged with that carelessness. If the master of the tug Hedges in
navigating this boat on that day was guilty of carelessness, that justifies you
in holding the plaintiff guilty of contributory negligence. * * * No matter

if he [the master of the Slatington] was careless, if both were careless, the verdict must also be for the defendant."

By request the court also charged that:

"If the jury find that the tug Ira M. Hedges or the persons in command of such tug were guilty of negligence which in any way contributed to the collision, the plaintiff cannot recover."

The plaintiff excepted to the charge in this respect, and we are to consider whether under the circumstances this was a correct exposition of the law.

It is conceded that the English admiralty and law cases hold that the tow is in command, and that the tug is the agent or servant of the tow, so that the negligence of the tug is imputed to the tow; but it is urged that a different rule applies in the United States, though we are unable to find any adjudicated case which clearly meets the present situation, and we are inclined to believe that the law depends upon a question of fact whether the circumstances are such as to make the tow the master and the tug the servant, or whether the contract between the two is such that the master of the tug is responsible for the navigation. In the former case the tow would have to accept the responsibility for the negligence of the tug, while in the latter, if the master of the tow was free from negligence, he would be entitled to recover, notwithstanding the concurrent negligence of the tug. "The responsibility of the tow during navigation," says the American & English Encyclopædia of Law (volume 28, p. 270), "is dependent on the mode of towage. Where the tow is lashed to the side of the steam tug and depends entirely upon the latter as well for steerage as for motive power, the responsibility for the navigation of both is wholly on the steam tug, as the tow is as completely under the control of the steam tug as if she were a part of that vessel. Cases arise, however, where the tow is propelled by a hawser extending from the forward part of the tow to the stern of the steam tug, and in such cases a different rule applies. While a tow propelled by a line or hawser is in a general sense under the control of the tug, still there are certain duties incumbent on it. It must obey all proper orders of the tug, be steered properly, and follow as far as possible in the wake of the tug, and, in short, perform all of those duties which nautical skill demands for the proper management of a tow." This is but another way of saying that every man is bound to use that degree of care and skill which the circumstances of his situation demand as a condition of recovery in the event of damages sustained through the negligence of others, and this, we apprehend, is the true rule of law in all cases of this character. If the tow is in a position to exercise any degree of care, it is bound to do so. If it is not, then the fact of its helplessness in the situation is evidence of a lack of contributory negligence, and it may recover upon showing the negligence of the defendant constituting the proximate cause of the collision. Mr. Justice Clifford in The Galatea, 92 U. S. 439, 23 L. Ed. 727, says:

"Owners of ships appoint the master and employ the crew, and consequently are, as a general rule, held responsible for the conduct of both in the navigation of the vessel. Exceptions exist to that rule in certain cases, as where

the craft is one without sails or steam apparatus, or where the difficulties of navigation make it necessary to employ a steam tug, and to turn over the control and navigation of the ship to the master and crew of the latter vessel. Steam tugs are usually employed in such cases, but the owners of the ship or other craft do not necessarily, in that event, constitute the master and crew of the accessory motive power their agents in performing the service, as they neither appoint the master of the steam tug or ship the crew, nor can they displace either the one or the other. Sturgis v. Boyer, 24 How. [U. S.] 122, 16 L. Ed. 591. Beyond doubt, they are under obligations to employ a seaworthy steam tug as the accessory motive power to their own ship or craft, and they continue to be responsible for the negligence, omission of duty, or unskillfullness of the master and crew of their own vessel."

See The Arctic Fire Ins. Co. v. Austin, 69 N. Y. 470, 479, 25 Am. Rep. 221.

It was conceded that it was not necessary to decide these questions in the case cited, but we are of opinion that the law as suggested in the above excerpt is in harmony with the weight of authority, and it is clearly in line with the tendency of the courts of this country in the matter of imputed negligence. In Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652, the court distinctly repudiated the English doctrine that one who trusts himself to a public conveyance is in some way identified with those who have charge of it in such a way that he cannot recover unless the persons in charge might recover, and this is now generally regarded as the established law of this country.

While there is, perhaps, more of conflict, it is now regarded as settled in this jurisdiction that:

"The true principle seems to be that, when a person is injured by the negligence of the defendant and the contributory negligence of one with whom the injured person is riding as a guest or companion, such negligence is not imputable to the injured person, while, on the other hand, it may be imputable when the injured person is in a position to exercise authority or control over the driver." Am. & Eng. Ency. of Law, 447–448, and authorities cited in note 1 on latter page.

Indeed, it has been well said that there can be no such thing as imputable negligence except in cases where that privity which exists in law between master and servant and principal and agent is found. In order that the negligence of one person be properly imputable to another, the one to whom it is imputed must stand in such a relation of privity to the negligent person that the maxim "Qui facit per alium, facit per se," is directly applicable, and the mere fact that the tug boat in the case at bar was employed to tow the plaintiff's scow does not establish that relation.

While perhaps the facts as brought out on the trial did not leave the situation entirely clear, we are of opinion that the charge of the learned Trial Court did not correctly state the law of the case, and that for this reason there should be a reversal of the judgment and a new trial. As we understand the law of negligence, every man who is injured through the fault of another, without fault on his part, is entitled to a remedy, and if the plaintiff in this action, in hiring a seaworthy and competently manned steam tug to tow his scow, surrendered the navigation to the latter, under such circumstances that no

active duty was left for him to perform, then he is entitled to recover, notwithstanding the concurrent negligence of the steam tug which was in charge of the tow.

The judgment and order appealed from should be reversed, and a new trial granted, costs to abide the event.   All concur.

