BaRNEy, J.,
delivered the opinion of the court.
In the year 1897 the Government was engaged in the repair of its dry docks at the Brooklyn Navy-Yard, and had entered into a contract with Johnson Brothers to furnish lumber for that purpose. Afterwards Johnson Brothers placed an order with Charles S. Hirsch & Co. to furnish this lumber. Some unavoidable delays occurred in the procuring of the lumber, which caused the Government officials to offer to Charles S. Hirsch & Co. the free use of a Government tug for the purpose of towing a vessel to and return from Brunswick, Ga., *297 laden with lumber to enable said company to comply with the contract mentioned. Thereupon, and on the, 6th day of October, 1897, Charles S. Hirsch & Co. entered into a charter party with the claimants to bring a cargo of lumber from Brunswick, Ga., to the Brooklyn Navy-Yard. This charter party is set out in full in the findings and appears to be in the usual form of such undertakings, with exceptions which will be noted and the discussion of which is deemed necessary in the decision of-this case. These exceptions are: (1) Charles S. Iiirsch & Co. agreed to furnish free of charge a Government tug for the towing of the brig Robert Dillon, to be used by the claimants on the voyage; (2) “ the master of the tug was to abide by the instructions of the master of the Dillon as to the manner of towing; ” (3) in consideration of free towage and the fact that the tug was to abide by instructions of the master of the Dillon, the claimants agreed to waive “ any and all right for damage or possible claim for any fault, negligence, or failure on the part of the tug from errors of navigation or any other cause incident to the towage.”
The brig in tow of the tug proceeded to Brunswick without special incident until within about 20 miles of its destination, when both vessels ran upon a shoal — the tug first and the brig a little later — causing such damage to the brig as to constitute practically a total loss. The findings show that this accident was caused partly by the fact that the tug was not properly equipped with the necessary nautical instruments and partly by the fact that the master of the brig did not exercise his right to navigate the voyage, his vessel being properly equipped for that purpose.
It is contended by the claimants that the Government was in fact a party to the charter party, though not so in terms, and that the accident was caused by the failure of the Government to furnish a properly equipped tug for the purpose of towage, while on the part of the Government it is contended that it was not a party to the contract and was in no way privy to the same; and, also, that in any event the accident was primarily caused by the failure of the master of the brig to take any part in'the navigation of the expedition, though authorized and directed so to do by the charter party, *298 being freely offered that privilege and having on board all of the necessary nautical instruments for that purpose; in other words, that the claimants, by the terms of the charter party, undertook to navigate the voyage and • were alone responsible for its safe conduct. These two propositions will be discussed in their order:
I. Was there any privity of contract between the Government and the claimants ? If so, and without taking into consideration the second proposition, it was. bound to deliver to the claimants a tug properly equipped for the purposes contemplated by the charter party. (2 Parsons on Contracts, 126; Sturgis v. Boyer, 24 Iiow., 110; Ins. Co. v. Austin, 69 N. Y., 470.)
We can not see, however, how the charter party imposed any obligations whatever on the part of the Government. True, it was anxious that the lumber should speedily be procured for the completion of its dry docks, and was so anxious that it ivas willing to give the free use of one of its tugs to aid in that purpose. But this was the same solicitude, differ- - ing only in degree, which every, individual has that material shall be seasonably supplied for the construction of a work in which he is engaged. Charles S. Hirsch & Co., for Johnson Brothers, had engaged to perform this service, and to expedite it the Government was willing to allow that company the free use of one of its tugs. This gift was to Hirsch & Co. and not to the claimants, who doubtless received a smaller sum for the voyage than they would if they had furnished their own towage; and it was Hirsch & Co. who agreed to furnish the tug and not the Government.
It could not be contended that the Government would be liable to the claimants for damages if it had failed entirely to furnish any tug under the charter party, because it never agreed with them to do so; and, for that matter, it is very doubtful if Hirsch & Co. could have complained of any such failure on the part of the Government, because the promise to that company was entirely nudum factum. In short, the contract was between the claimants and Hirsch & Co., and they were the only parties to the contract. At the common law it was the rule that a stranger to a contract could neither claim any benefits nor sustain any liability under it. An ex *299 ception to this rule is recognized in many jurisdictions in cases where a contract is made directly and expressly for the benefit of another. But it is needless to say that this case has none of the features necessary to bring it within this exception ; and if it did, the Government alone could take'advantage of it. •(National Bank v. Grand Lodge, 98 U. S., 123; Jefferson v. Asch, 53 Minn., 446 — 25 L. R. A., 257, and note; Burton v. Hanson, 36 Kans., 246.)
There appears to be no uncertainty or ambiguity in the provisions of the charter party, and it contains nothing whatever showing that the Government is to receive any benefit or incur any liability under it. We are not called upon to reform it, hence evidence to vary its terms is not permissible.
II. As we have already disposed of the case adversely to the claimants, a discussion of the second question is hardly necessary, and will only be briefly referred to.
An examination of the charter party clearly shows that it was agreed that the master of the brig should have the direction of the voyage. The tug was expressly relieved from all errors of navigation because it was to abide by instructions'of the master of the brig. The findings show that the'brig was fully equipped with all necessary nautical instruments for the purposes of the voyage and the tug was not. If the master of the brig had exercised his authority under the charter party, as was offered to him to do, doubtless no accident would have occurred.
For the reasons given the petition is dismissed.