PHILIP E. SPELMAN, Respondent, v. FREDERICK A. DELANO et al., Receivers, Appellants.

Kansas City Court of Appeals, January 5, 1914.

DAMAGES: Bailee: Contributory Negligence of Bailee. In a suit by a bailor of personal property against a third party for damages to the property while in the possession of the bailee, if there is no element of principal and agent, master and servant, or of partnership existing between the bailor and bailee, then the contributory negligence of the bailee is not imputable to the bailor, so as to constitute a defense. The rule is different, however, if the bailment is of such a character as to involve any of the elements above mentioned.

Appeal from Randolph Circuit Court.—*Hon. Alex. H. Waller*, Judge.

AFFIRMED.

*Robertson & Robertson* and *N. S. Brown* for appellants.

*Don C. Carter* for respondent.

TRIMBLE, J.—In this action recovery is sought for the negligent killing of a horse by defendant's train at a public crossing. The negligence charged was a failure to obey the statute with reference to ringing the bell and sounding the whistle eighty rods from the crossing.

On the occasion in question the horse was being ridden along the public road by one Dan Cook, a young man who was engaged in working by the day for plaintiff. Cook lived about two miles from plaintiff's house. He spent his nights at home, furnished his own meals and quit work every evening at six o'clock. Occasionally he would ask plaintiff for a horse to ride home. And, if the request was agreeable to plaintiff, it was granted, Cook keeping the horse overnight at such times and returning him next morning when he came to work, feeding and caring for the horse while in his possession. This obtention of the horse occurred possibly as often as twice a week.

On the day the horse was killed young Cook obtained the horse when the day's work ended and started homeward riding bareback. The crossing was about a mile west of plaintiff's house, and it was also a mile south from plaintiff's home to the railroad, it lying in a northwest and southwest direction. It was plain open country and one could see down the railroad on each side of the crossing for a long distance, and could do this continuously while going along the public road for at least a quarter of a mile before reaching the crossing. And in travelling this quarter of mile toward the crossing one could see southeast (or east as it is termed in railroad parlance) down the railroad for a mile or two. It was about 6:30 in

the evening. Cook was approaching the crossing in a lope which is a slow gallop. The train was a fast mail going northwest (or west in railroad terms). It was about twenty-five minutes late. A man named Pringle was walking down the railroad track coming from the northwest, approaching the crossing and about 800 feet away from it. At that distance he could see Cook a quarter of a mile from the crossing. Before noticing Cook he saw the steam from the approaching train and knew that one was coming. Engaged in watching the train, he paid no further attention to Cook, until the latter got close to the crossing and then the train was in 200 or 300 feet thereof. It was 150 or 200 feet from the crossing when Cook got right up to the track.

As Cook approached the crossing, as stated in a lope, or as he said in a trot, along the country road, he looked northwest along the railroad track and saw Pringle. He did not, however, look to the southeast although if he had done so the train would have been in plain view and he would have seen it, and could have seen it for a mile or two down the track. He did not look southeast in the direction from which the train was coming because he supposed it had gone, as it was past time for it to be there. As he rode up on the track or just to the track, both he and the horse, at the same instant, saw the train coming from the southeast and about 200 feet away. The horse turned and ran northwest along the track so that when the train overtook him, the pilot beam struck the horse on the left side a little below the tail hurling him some distance along the right of way and killing him. In going alongside the track the horse jumped the cattle guard before the train struck him. Cook was on the horse when it jumped the cattle guard, but does not know whether he was on him when the horse was struck or not. He says the spot where he fell was about six feet from the cattle guard and that where the horse fell

was about thirty feet from the guard. The engineer says Cook slid off the horse before it went over the cattle guard, and that he was on the public road just far enough east of the crossing to escape being struck.

Plaintiff valued the horse at $200. Defendant demurred to the evidence, was overruled, and the jury returned a verdict for $175. Defendant appealed.

Point is first made that the case cannot be affirmed because there was no proof that the defendant receivers were in charge of and operating the road. But the petition alleged that they were, and this was not denied or put in issue by a special plea. The case originated in the justice court and, under the pleadings required in such courts, no answer is necessary, nor was one filed. But in such cases the defendant is presumed to plead the general issue. [Reed v. Snodgrass, 55 Mo. 180; Farmers & Drovers Bank v. Williamson, 61 Mo. 262.] When the general issue alone is pleaded it does not put in issue either the character in which the plaintiff sues or the character or capacity in which the defendant is sued. [McNalta Receiver v. Lockridge, Admr., 137 Ill. 270.] The fact that the receivers were in charge and operating the road being thus impliedly admitted, plaintiff was not required to prove such allegation. [Powers v. C. B. & Q. Ry. Co., 142 Ill. App. 1. c. 524; Taylor v. Peoria & E. R. Co., 156 Ill. App. 1. c. 155; Walker v. Wooster's Admr., 61 Vt. 403; 1 Chitty on Com. Law Pl. (16 Am. Ed.), 528.] This was true at common law and it is equally so under the code. [Baxter v. St. Louis Transit Co., 198 Mo. 1, 1. c. 6.]

The point next raised is that defendants are not liable because Cook was guilty of contributory negligence. The first question under this point, then, is: Was Cook guilty of contributory negligence? If this be answered in the affirmative, then a second question arises, namely: Was he, at the time the horse was struck, a servant of the plaintiff or was he merely

a bailee of the horse? If he was a servant of the plaintiff at that time, then his negligence was plaintiff's negligence, and, in that event, plaintiff cannot recover. If not a servant but merely a bailee, then a third question arises: Can the negligence of the bailee avail appellants as a defense to an action by the plaintiff bailor? In other words, if Cook was guilty of contributory negligence, can that negligence be imputed to the plaintiff in an action by him against the defendants for negligently injuring the horse?

Undoubtedly Cook was guilty of contributory negligence. He admits that he never looked toward the southeast to see if a train was coming although, if he had done so, he could have seen a train for two miles down the track and could have seen it from any point on the country road for a quarter of a mile back from the crossing. He was riding in a lope, or trot as he says, not thinking about a train, but watching Pringle as he came down the railroad from the northwest. Thus engaged, and heedless of his danger, although he knew it was at a railroad crossing, he started to cross the track and just as he reached the rail he saw the train 200 feet away. If this doesn't constitute contributory negligence it is hard to conceive of what would. [Newton v. Railroad, 152 Mo. App. 167; Burge v. Railroad, 244 Mo. 76; Holland v. Railroad, 210 Mo. 338.]

Was Cook, at the time the horse was injured, the servant of plaintiff? He was not. He worked for plaintiff by the day, and the relation of master and servant terminated each day when the day's work ended. Plaintiff had no control over Cook after six o'clock. What he did from that time until he returned to work again, between seven and eight the next morning, was no concern of plaintiff's. Indeed he could not legally require Cook to return to work next morning, since the hiring was by the day, and Cook was only paid for the days he worked. Plaintiff was un-

der no obligation to transport Cook to and from his place of labor. His lending the horse to Cook was no part of the contract between them. It was done only when Cook requested it, and was then only a gratuitous favor which plaintiff could withhold or not, as he chose. But the real test as to whether Cook was a servant of plaintiff at the time of the accident is whether the former was at that time subject to the latter's orders and control. [Wood on Master and Servant, sec. 317; Atherton v. K. C. Coal Co., 106 Mo. App. 591.] He was not. Consequently the relation between them was not that of master and servant, but was that of bailor and bailee.

The gratuitous lending of the horse was a bailment thereof by plaintiff, the bailor, to Cook, the bailee. According to the classification of bailments by Sir Silliam Jones, it was a *commodatum,* which is a loan for use, or the bailment of personal property without reward to be used by the bailee for his sole benefit.

This brings us to the question, Is the contributory negligence of the bailee imputable to the bailor in an action by the latter against a third party for negligently injuring the subject of the bailment? On this question there is and has been a sharp conflict among the authorities.

In Forks Township v. King, 84 Pa. St. 230, decided in 1877, it was held that the owner of a horse, lent without hire, is responsible for the negligence of the borrower, and if the negligence of the latter contributed to an accident whereby the horse was killed, the owner cannot recover. The imputability of the borrower's negligence was not discussed by the court, but seems to have been assumed, although the point was raised in defendant's brief. But in a later case decided in 1900, Gibson v. Bessemer, etc., R. R. Co., 226 Pa. St. 198, the same court held that the bailor

of a horse, let for hire to the bailee, can recover against a railroad for negligently killing the horse at a grade crossing notwithstanding the contributory negligence of the bailee, because such negligence could not be imputed to the owner of the horse.

In Texas, etc., Ry. Co. v. Tankersley, 63 Tex. 57, it was held that the contributory negligence of a bailee of cotton whereby it was consumed by fire from a railway engine is imputable to the owner thereof. The court does not discuss the question, but merely announces the rule that the negligence of the bailee was imputable to the bailor. The court, however, seems to have thought the relation of principal and agent also existed between the bailor and bailee in that case for, immediately in connection with its announcement of the above rule, it says (p. 61), ''the negligence of the agent in such case is imputable to the principal.''

In Illinois Cent. R. R. Co. v. Sims, 77 Miss. 325, the court held that the contributory negligence of the borrower of a work animal will defeat recovery by the owner for injuries inflicted upon it by a third party while the animal was employed in the service for which it was loaned. In passing on the point involved the court says: ''Acting within the scope of his employment, the negligence of the agent is imputed to his principal, that of the servant to his master, and that of a bailee for hire to the bailor.

''Why the contributory negligence of a gratuitous bailee, while using the property for the very purpose for which it was loaned, should not be imputed to the bailor who intrusted it to the bailee to be thus used, we are unable to see. There is the same privity of contract, in all essential features, as in bailment for hire, and as in engagements between principal and agent, and between master and servant.''

In Witty v. Indianapolis, etc., Railroad, 105 Ind. 55, the Supreme Court of that State held that where the borrower of a horse, while intoxicated, rode an

animal along a highway to a railroad crossing, and there, because of the absence of a cattle guard as required by the statute, the horse turned and went down the track until killed by an approaching train, the railroad company was not liable to the owner in an action based on the statute requiring such companies to keep their tracks securely fenced. Strictly speaking the question of imputed contributory negligence was not involved in the case. The court said that, in an action based on the statute to fence, contributory negligence was no defense, and that judgment must be given irrespective of that element. The court held, however, that the act of the borrower, in riding drunk upon the right of way, was the same as if he had, while sober, voluntarily placed the horse in danger of certain destruction; that the borrower stood to the railroad company as the owner of the mare, for the owner had placed it in the borrower's possession and control.

In the case of Puterbaugh v. Reasor et al., 9 Ohio St. 484, the plaintiff sued for a mare killed by the alleged negligence of the defendant and one Reddick who had possession of the horse at the time. The facts in that case were that Reddick was working the horse in a field. The defendant, Reasor, came from an adjoining field and got into a quarrel with Reddick. Thereupon Reasor went over the fence into the road and invited Reddick to come out into the road and fight. Reasor accepted the challenge and went, leaving the team where it stood not secured in any way. The horse, becoming frightened at the noise of the fight, ran away and was killed. It was held that plaintiff could not recover against Reddick. The court, in disposing of the case, says the possession of Reddick was the possession of the plaintiff, and if Reddick was guilty of such negligence as would preclude him from recovering, were he the owner, his negligence would be equally fatal to the plaintiff's cause of action. It

will be noticed in that case, however, that the bailee, Reddick, was in fact the agent of the plaintiff, as he was engaged in a joint enterprise of farming with plaintiff at the time, and the instruction of which plaintiff complained, and which the judgment approved, contained the proviso "if Reddick had the custody of Puterbaugh's mare, *as the agent of Puterbaugh.*" Another thing, the negligence proximately causing the injury was Reddick's leaving the horse untied in the field while hitched to a harrow. When Reasor, from the road, invited him to come out and fight, he was not strictly a party to Reddick's negligence in not first securing the horse before accepting the challenge.

The case of Dunn v. Old Colony, etc., Railroad, 71 N. E. 557, cannot be considered an authority holding that the negligence of a bailee can be imputed to the bailor, because presumably the driver of the wagon, struck at the crossing, was the servant of the plaintiff. At any rate the court remarks that the fact that the negligence of the driver is to be imputed to the plaintiff "is not contested." In other words, no point of that kind was made.

In Smith v. Smith, 2 Pick. 621, the driver was bailee of the horse injured and the owner was not allowed to recover on account of the driver's negligence, but the question whether the bailee's negligence could be imputed to the owner was not raised in the briefs nor discussed by the court. The decision merely proceeds as if the plaintiff himself had been the driver.

The case of Arctic Fire Ins. Co. v. Austin, 69 N. Y. 470, was one in which a cargo of corn was shipped by its owner in the *canal boat* "Parsons." While it was being towed at night down the Hudson river by one of the defendant's *tugboats,* "McDonald," it was struck by another tugboat "Austin" owned by the defendant, and the cargo was lost. The plaintiff insur-

ance company, having paid the insurance to the owner of the cargo and being subrogated to his rights, sued the *tugboat* company for the loss. It was held that, as the canal boat was not under the command of the tugboat, but was simply being towed by it, and was still under the charge of its (the canal boat's) own captain and crew, no recovery could be had against the *tugboat* company because of the contributory negligence of the *canal boat* captain in not having a light thereon. Of course this, in effect, was holding that the negligence of the bailee, the canal boat, could be imputed to the owner of the cargo. But it must be remembered that in this case the relation between the owner of the cargo and the canal boat company was that peculiar kind of bailment arising between a consignor and a common carrier. As said by the court in that case, on page 482, "the possession of the carrier is that of the merchant shipper; he is the bailee, and *quasi the agent of the shipper*. Whatever he does in the course of the service and bailment he does *as the agent and representative of the owner;* and if so, all the consequences of the negligence of the carrier will be visited upon the owner of the freight to the extent of depriving him of any remedy over against a third party for losses to which the carrier, by his wrongful or negligent act, had contributed." (All italics ours.)

The carriage of goods is generally classed as a contract of bailment different from the ordinary contract of bailment and has certain peculiarities and is governed by principles characteristic of the relation between carrier and consignor or consignee. In that class of bailments the bailee is also the agent of the bailor. This principle is announced in Simpson v. Hand, 6 Whart. (Pa.) 311, 1. c. 321, where it is said: "There is at least privity of contract betwixt a merchant and his carrier; and the former, when he commits the management and direction of his goods to

the latter, giving him, as he does, authority to labor and travail about the transportation of them, *necessarily constitutes him, to some extent, his agent.*" (Italics ours.)  Of course if, by reason of the circumstances of the bailment, there is a privity of contract between the bailor and bailee so that the bailee can be regarded as *the agent of the bailor*, then the negligence of the former should be and is imputed to the latter, the same as when the relation of master and servant exists between them.  For this reason Beach on Contrib. Neg. (3 Ed.), sec. 113, is not an authority in point on the question here involved.  The author says:  "As to the shipper, the carrier is an agent, and liable to the full extent involved in that relation."

So much for the cases holding, or apparently holding, that the negligence of the bailee is imputable to the bailor.  It must be remembered that the question in the case at bar does not involve a bailment in which the bailee is the agent or servant of the bailor, nor is there any privity of contract between them.  Unless, indeed, it can be said that the bailor, merely by lending the horse, makes the bailee his agent to care for the horse and thereby creates such a relation as will make the bailor responsible for the acts of the bailee.  Now, it cannot be said that if the bailee had, after borrowing the animal for his own purpose, negligently ridden against another and injured him, the injured person could have any right of recovery against the bailor.  If it be said that the bailor, by lending the horse, makes the bailee an agent for the care thereof and is thereby impliedly responsible for the latter's conduct in reference thereto, and also makes it possible for the injury to occur, the answer is that the bailee is not the bailor's agent in caring for the horse else the bailor would be responsible for a negligent injury committed by the bailee in using the horse, and this has never been held to be so.  If the bailee failed to exercise the proper care, the bailor

would have a right of action against him; and he would also have a right of action against a third party for negligently injuring him. And when the negligence of the two concurs, he can sue both jointly or sue either one as he chooses. And if lending the horse can be said to render it possible for the injury to occur, the act of lending was not such as to render plaintiff blameworthy in any degree. So that we have a case where a plaintiff, without fault or negligence of his own, is suing for a loss occasioned by the concurrent negligence of two others. In such case can one of the persons in fault set up in defense the fault of the other, as against the owner who is wholly without fault? We think not, and, while at first blush, the rule that the contributory negligence of a bailee cannot be imputed to a bailor when suing a third person for injuries to property, may seem unjust; yet, *when the rule is confined to those bailments which do not involve any privity of contract or agency between the bailor and bailee,* it will not appear to be so harsh and unreasonable as might be supposed. And the weight of authority seems now to be in favor of the rule that, in such cases, the negligence of the bailee will not be imputed to the bailor. In 1 Thompson on Neg. (1901), sec. 512, it is said: "Unless the principles upon which the courts have at last settled have been grossly misconceived, the negligence of a bailee or his servants is not imputable to his bailor, so as to prevent the bailor from recovering damages from a third party for an injury to the property."

The case of New York, etc., Railroad Co. v. New Jersey, etc., Railway Co., 60 N. J. L. 338, announces this rule in the case of a bailment for hire. In that case it was urged that, as the bail*ee* could have sued and in that event his contributory negligence would have been a complete defense, so it can be set up successfully when the bail*or* sues; that the possession of the bailee involves the owner, or bailor, in all the con-

sequences of the default of the bailee. The court on page 344, in answer to this contention, said:

"The reason of this contention, as it appears to the court, is not apparent or well founded.

"It need only be said that a bailment is a contract which is interpreted by the same rules as other contracts. The bailor and bailee are just as independent of each other in regard to the subject-matter as the contract by its terms permits them to be." And then, after discussing the relations existing between bailor and bailee, the court, on page 345 says, "Therefore, there is nothing in the relation of the bailor and bailee which of itself can prevent the bailor from seeking out the third party as the wrongdoer, and imposing upon him the liability for the results of his conduct to the subject of the bailment. It would seem, upon reason, that there could exist no objection to the joint liability of the wrongdoer and the bailee, when the joint negligent act of both caused the injury." The court, after observing that, in a contract of bailment, the bailor is not responsible to a third party for injuries occurring to such third party by the negligence of the bailee, and that the bailee does not stand in the place of the bailor nor represent him in any capacity, and that the liabilities of the bailor and bailee to third parties are essentially independent of each other, proceeds to say:

"The contributory negligence of a third person can only be set up in a defense when it is legally imputable to the plaintiff, and its existence must depend upon some connection or relation between the plaintiff and the third person from which such legal responsibility may arise. It is a general rule that it is no justification of the misconduct of the defendant that some third person, a stranger, was also in the wrong . . . It may be deemed to be settled in this State that the employees or servants of a bailee are not the servants of the bailor in any such relation as

to make the bailor liable to third parties for their negligence or misconduct in relation to the thing bailed. . . . It is only when the contributory negligence is of such a character and the third person is so connected with the plaintiff that an action might be maintained against the plaintiff for damages for the consequences of such negligence, then when the plaintiff brings the action, that negligence is, in contemplation of law, the plaintiff's negligence, and it is justly imputed to him. . . . This relation does not exist between the bailor and bailee under the ordinary contract of bailment.''

In this case also the court, at page 349, speaks of the line of cases, hereinbefore mentioned, which hold that where the bailor and bailee are shipper and common carrier, the negligence of the latter cannot be imputed to the former, and says that the reason of the rule in those cases rests upon the peculiar contractual relations between a shipper and a common carrier, and is grounded on public policy. The court cites, as among such cases, Simpson v. Hand, 6 Whart. 311, and Arctic Ins. Co. v. Austin, 69 N. Y. 470, heretofore analyzed, and in effect holds that they are not in point on the question involved. The court concludes by saying the bailee was bound to use reasonable care and diligence to preserve the property from injury; the third party (the railroad) was bound to exercise reasonable care to avoid injuring the property; the intervention of the negligence of the bailee could not shield the defendant (the railroad) caused by its own negligence; the plaintiff might have elected to bring suit against both, or he could maintain an action against either; and it would be no defense for the one proceeded against to say that the injury was contributed to by the negligence of the other. This case and the opinion therein was afterward affirmed and adopted by the New Jersey Court of Errors and Appeals, the court of last resort in that State. [61 N. J. L. 287.]

The same rule is announced in Sea Ins. Co. v. Vicksburg, etc., Ry. Co., 159 Fed. 676. In a note appended to the report of this case in 17 L. R. A. (New Series) 925, the editor says the majority of cases announce the contrary, and cites the cases already mentioned as favoring the rule of imputable negligence. But later, in a note to the case of Gibson v. Bessemer, etc., Railroad Co., the late Pennsylvania case heretofore cited, found in 27 L. R. A. (New Series) 690, the editor refers to his former note and says perhaps the Gibson case "may be regarded as sufficient to turn the scale in favor of the other side of the proposition."

In Connecticut the rule is also that the negligence of the bailee is not to be imputed to the bailor in an action by the latter against a third person for the negligent destruction of the subject of the bailment. [Currie v. Consolidated Ry. Co., 81 Conn. 383.] In this case the bailee was in the bailor's regular employ but, at the time the horse was killed, was not the bailor's servant.

In Van Zile on Bailments, sec. 130, it is said: "The bailee does not stand in the place of the bailor; he does not represent him in such a relation as would render the bailor liable for his negligent acts, or for the negligent acts of his servants or agents; and so, while in an action brought by the bailee against third parties for the injuries to the property, the third party may defend in the action upon the ground of contributory negligence upon the part of the bailee, his servants or agents, in an action by the bailor, who is the owner of the property, against a third party for injury to the bailment, the negligence of the bailee, or his servants or agents, would be no defense and would not prevent a recovery for the reason that such negligence is not imputable to the bailor."

So that, so far as the cases go, the weight of authority seems to be clearly in favor of the rule that in a case where the circumstances show that the rela-

tion between the owner of the property and the one in possession of it at the time of its destruction is simply that of bailor and bailee, and does not involve any element of partnership, principal and agent, or master and servant existing between them, then the contributory negligence of the bailee is not imputable to the bailor in an action by the bailor against a third party for negligently destroying the bailor's property.

There is no case in Missouri, so far as the writer knows, in which the point here involved is passed upon. And perhaps there are apparent difficulties in holding either way on the proposition. But, unless there is some connection between the bailor and bailee whereby the former ought to be responsible for the negligent acts of the latter, it is not seen how or why the former should be denied recovery because of the latter's negligent acts in a case of this kind. No one will say that if Cook had negligently run down and killed a baby while riding the horse homeward, the plaintiff could be held liable simply because he lent Cook the horse. And if he is not responsible for the one act why should he be denied recovery because of the other? And in as much as the plaintiff is blameless for lending the horse (that is, there is no showing that he lent it to an incompetent and reckless man, known to be such), the question resolves itself down to the point whether, as between one who is partly to blame and one who is not to blame in any way for the killing of the horse, the loss ought to fall upon the one who is partly to blame rather than upon the one who is not to blame at all. It seems to the writer that, as between the two, it should fall upon the one who is partly to blame, and, as said before, this is in accordance with the weight of authority. Consequently it is ruled that since there was no element of agency, master and servant or partnership in the bailment in question, the contributory neg-

ligence of the bailee cannot be imputed to the bailor, and the learned trial court was correct in so holding.

An objection to the instructions has been raised, but it cannot be treated as having any force. The jury could not have been misled. Even if plaintiff's instruction was lacking in clearness on the matter mentioned, defendant's instructions so fully, plainly and explicitly covered the precise point involved as to leave no room for confusion or misunderstanding. [Milligan v. Railroad, 79 Mo. App. 393, l. c. 396.] We are not allowed to reverse the case for this alleged error. [R. S. Mo. 1909, sec. 2082.] Judgment affirmed. All concur.