Lonnie Deane BARKER, Clayton Barker *v.*
STATE of Arkansas

5464                                              453 S. W. 2d 413

Opinion delivered May 4, 1970
[Rehearing denied June 8, 1970]

*Virgil R. Moncrief* and *John W. Moncrief,* for appellants.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

Carleton Harris, Chief Justice. Appellants, Lonnie Deane Barker and Clayton Barker, were charged by information on February 17, 1969, with the crime of cattle stealing, it being alleged that they feloniously killed with intent to steal an Angus heifer calf, the property of Max Trice. The alleged crime occurred on February 6, 1969. On trial, appellants were convicted by a jury and each was sentenced to one year imprisonment in

the state penitentiary. From the judgment so entered, appellants bring this appeal. For reversal, it is contended that the court erred in refusing to give appellants' requested Instruction No. 1, and that appellants were prejudiced by the testimony of the sheriff when he testified that appellants refused to talk with him about the alleged crime, saying that they had rather not tell him anything.

Appellants' requested Instruction No. 1 was as follows:

"The court instructs you the jury that larceny is the felonious taking of the property of another with the felonious intention of depriving the owner of his property and converting same to his own use and the burden is on the prosecution to prove beyond a reasonable doubt that the defendants intentionally and feloniously took the property with the intention of depriving the owner thereof."

The court refused this instruction but gave it in a modified form, leaving out the phrase, "and converting same to his own use."

The court had already, in its Instruction No. 2, instructed the jury:

"Larceny is the felonious stealing, taking and carrying, riding or driving away the personal property of another with the intent to deprive the true owner of his property. The statute upon which this prosecution is based is as follows:

" 'Every person who shall mark, steal or kill, or wound, with intent to steal, any kind of cattle, pigs, hogs, sheep, or goats, shall be guilty of a felony and, upon conviction thereof shall be imprisoned in the penitentiary for any time not less than one nor more than five years.'

"The value of the cow is immaterial. If he is guilty

of stealing this man's cow, he is guilty of a felony.

"The defendants start out with the presumption of innocence in their favor, and that presumption of innocence follows them throughout the trial, or until the evidence convinces you of their guilt beyond a reasonable doubt and that the offense occurred in this county and state within three years next before the filing of the information."

As mentioned, appellants' requested Instruction No. 1 differs from the modified form of the instruction only in that the version given leaves out the words "and converting same to his own use". This omission, says appellants, constituted reversible error.

The evidence reflected that Lonnie Barker, his brother Clayton Barker, and Clayton's wife, Betty, were travelling in an Oldsmobile on Highway 146 towards Stuttgart when Lonnie Barker got out of the car and killed the calf owned by Trice which, with other cattle, was being pastured adjacent to Highway 146. Appellants then put the dead calf in the trunk of the car, where it was, within a short time, found by the sheriff, who had received a call from a neighbor who witnessed the occurrence. At the trial, the Barkers all testified that they saw a wolf in the field, and that Lonnie Barker was shooting at the wolf, but missed it, and hit the calf. Lonnie testified that he went out into the field looking for the wolf but it "got away"; that the calf was quivering and kicking, with no chance to live, and he shot it in the head. Appellants were aware that the cattle in the field belonged to Trice, and they both testified that they had no intention of depriving Trice of his calf but placed it in the trunk of the car for the purpose of taking it to the owner. They did not stop at Trice's farm barn since, according to Clayton, Trice's truck was not there, and they had in mind taking it to the owner's home in the city of Stuttgart. Appellants were arrested by the sheriff while they were still driving on Highway 146, the officer testifying that the car was travelling 60 or 70 miles

per hour, and that he forced them into the ditch. Within a few minutes, Mr. Trice arrived at the scene, and upon request of the sheriff, one of the appellants opened the trunk revealing the calf.

Appellants contend, that inasmuch as they testified that it was their intention to return the dead calf to Mr. Trice, the jury should have been instructed that they must find that appellants had the intent to deprive the owner of his property and to convert the same to their own use.

The objection to the modification of the instruction is tied in with the objections made to Instruction No. 2. The latter objections were as follows:

"To which said instructions the defendants, at the time objected, to the language that the defendants are accused of the crime of grand larceny, they are charged with killing of a cow, property of the prosecuting witness on the 6th of February, 1969. This leaves the jury who is not familiar with the law with the impression that the crime of grand larceny may be or is the killing of a cow, the property of another, or the prosecuting witness, and that it is the killing of the cow on the 6th day of February which is the property of the prosecuting witness [which] is grand larceny. The words 'felonious stealing' are not definite, they don't have a definite meaning to someone who is unfamiliar as the jury is and then the quoting of the statute is objected to because the definition of larceny given by this instruction is not clear to the jury or is uncertain to the jury and the jury will have to make some conclusion as to what the law is and the jury is not versed in the law."

We do not agree that error was committed in the giving of the instruction.

In *Harrell v. State*, 177 Ark. 505, 7 S. W. 2d 23, this same contention was made, but we said:

"Instruction 5 told the jury that, if they found from the evidence, beyond a reasonable doubt, that appellant did 'unlawfully and feloniously take, steal and carry away one Remington automatic shotgun, of a value in excess of $10, the property of G. W. Barker', they should find him guilty. It is said that the instruction fails to tell the jury that the felonious intent at the time the gun was taken, if taken, was of the essence of the offense, and that it does not tell the jury that the taking must be with the intent to deprive the true owner of his property. We think the words 'unlawfully' and 'feloniously', as used in the instruction, are sufficient to cover the matters complained of. If the taking was done unlawfully and feloniously, it necessarily follows that it was done with felonious intent at the time of the taking, and done with the intent to deprive the owner of his property."

The court correctly instructed the jury on the appropriate statutes governing the offense here involved. The first part of the instruction quotes § 41-3901, 1964 Replacement, and the second paragraph quotes § 41-3917[1], 1964 Replacement. We have held that it is proper to instruct a jury in the terms of the statute. *Gentry* v. *State*, 201 Ark. 729, 147 S. W. 2d 1, and cases cited therein. The court very clearly told the jury that the question was whether appellants killed the calf, "with intent to steal".

As to the assertion that the court erred in striking the clause "and converting same to his own use" in appellants' requested Instruction No. 1, appellants mainly rely on *Dove* v. *State*, 37 Ark. 261 and *Export Insurance Co.* v. *Royster*, 177 Ark. 899, 88 S. W. 2d 468. We do not consider the *Dove* case as having any applicability to the present set of facts. In *Dove*, the question was whether one actually stole a mare, in

---

[1] A 1969 amendment by the General Assembly increased the maximum penalty from 5 to 21 years. This change has no application here for two reasons; first, because appellants only received the minimum sentence, and second, because the alleged offense was committed about a month prior to the effective date of the amendment.

taking her from the lot, or intended only to ride the mare for some miles (as he did) to escape a whipping and then abandon her. In other words, the question was whether the offense was a theft or a trespass. *Export Insurance Co.* v. *Royster,* supra, contains language supporting appellant's contention, but it is pointed out in *Sullivant* v. *The Pennsylvania Fire Insurance Co.,* 223 Ark. 721, 268 S. W. 2d 372, that this case cannot be relied upon. In fact, the last mentioned case is the only time that *Export Insurance Co.* has been mentioned since it was handed down. In *Sullivant,* we said:

"In support of the judgment, appellee relies on the case of *Export Insurance Co.* v. *Royster,* 177 Ark. 899, 8 S. W. 2d 468, where this court held that it is necessary to show that there was an intent to convert the property to the use of the taker to constitute larceny. This case was decided prior to the 1947 and 1953 amendments which resulted in § 41-3929,[2] supra. At that time the statute provided that there exist an intent to convert to the taker's use."

Of course, sound logic dictates that there is no reason to expressly require an intent to convert property taken to one's own use before it constitutes larceny. If one should be angry at his neighbor, and, as a matter of vengeance, steal a calf, kill it, and throw it in the Arkansas River, the owner would still be as much deprived of his property as though the neighbor had taken it to his own farm and claimed it as his own. The question of whether appellants intended to steal the calf was a matter for jury determination, and the evidence was more than ample to sustain this finding.

As to the second point, the testimony complained of is as follows:

---

[2]This section actually deals with persons who lawfully obtain possession of property but subsequently deprive the true owner thereof. Originally, there was a provision that there must exist an intent to convert to the taker's use, but this provision was eliminated by a 1947 amendment.

"Q. You did advise them of their rights at the time you put them in jail?

"A. I didn't at the time. I went back and talked to Lonnie first and he advised he didn't want to tell me anything and I talked to Clayton second and he didn't want to tell me anything and Betty she didn't want to say.

"Q. Then you made no effort to question them further?

"A. No sir. I did not.

"Q. They did refuse to talk to you?

"A. They said they had rather not tell me anything."

It is argued that this testimony constituted reversible error because the jury was told that the appellants had invoked the protection of the Fifth Amendment to the Federal Constitution, and this fact prejudiced the jury against appellants. We find no merit in this assertion and need say no more than that no objection was made to this evidence. Counsel says that the "Prosecuting Attorney and the Trial Court had agreed with counsel for appellants that appellants were objecting and excepting to testimony that might be given by the sheriff, without appellants having the same noted as the testimony was given."

We do not agree that the record reflects any such agreement. Prior to the sheriff appearing before the jury, his testimony was taken in chambers and a discussion between the court, prosecuting attorney, and defense counsel, related to whether appellants had been informed of their constitutional rights before being asked any questions. The testimony dealt with questions asked on the highway at the time appellants were arrested. There is no testimony at all before the

court in chambers conforming to the testimony heretofore quoted, and which appellants say constituted reversible error. As to the questioning at the time of the arrest appellants' counsel stated:

"I want to show a continuing objection and exceptions to each question and answer as being objected to and to save our exceptions and if he doesn't make a statement in answer to a question why naturally there would not be an objection."

The Prosecuting Attorney responded that he was "going to bring out matters not brought out in chambers." The court stated, "That is perfectly all right. Show a continuing objection to *matters discussed in chambers.*" (our emphasis) The court further stated:

"The court has no way of knowing the questions going to be asked and the competency or incompetency of the questions and if any new matter is brought out to which you object you should let the court have a chance to rule on it."

The Prosecuting Attorney then said: "I have no objection to continuing objections to the testimony he gives if the court has no objection", and the court responded that it had no objection but that "I was saying that it puts the court in the attitude of having to watch the testimony and say 'You can't say that' that is point. Go ahead. I will handle it that way."

As stated, the testimony now complained of was not given in chambers at all, and this means that there was never any objection to the evidence under discussion. It is really not clear from this record whether the "continuing objection" was to testimony only that was given in chambers, or whether there was supposed to be"a continuing objection" to all of the sheriff's testimony. According to appellants' argument, the court would actually have been required to act in the same capacity as appellants' attorney.

The testimony here complained of raises an entirely different question from the matters discussed in chambers. There, the question really was whether appellants had been adequately warned before questions were asked at the time of the highway arrest under *Miranda* v. *Arizona*, 384 U. S. 436, and *Escobedo* v. *Illinois*, 378 U. S. 478. Here, the contention of error is based on the fact that the sheriff revealed that the defendants were taking advantage of the Fifth Amendment to the Constitution. The testimony of the sheriff imparting this knowledge to the jury, say appellants, was reversible error, but we need not discuss the authorities cited for the reason already given.

Finding no reversible error, the judgment is affirmed.

