SULLIVANT *v.* PENNSYLVANIA FIRE INSURANCE CO.

5-456                                            268 S. W. 2d 372

Opinion delivered May 24, 1954.

[Rehearing denied June 21, 1954.]

*Barrett, Wheatley, Smith & Deacon,* for appellant.

*Edward L. Westbrooke* and *Terry L. Shell,* for appellee.

MINOR W. MILLWEE, Justice. On August 7, 1952, appellant, A. R. Sullivant, purchased from the agent of Pennsylvania Fire Insurance Company, appellee, a policy of insurance which insured, among other things, a 1947 Studebaker ½-ton truck against loss or damage occasioned by theft. The policy provided for a maximum coverage of $800.00 and defined theft as "loss or damage to the automobile caused by theft, larceny, robbery or pilferage."

At a hearing in the Jonesboro Municipal Court, the parties stipulated that, if called as witnesses, appellant, Hubert Rogers, his employee, and Curtis Kerr, a garage-owner, would testify as follows:

Appellant had farming interests north of Jonesboro, Arkansas, and employed Hubert Rogers of Nettleton, Arkansas, to assist him during the summer of 1953. Rogers was accorded the privilege of using the Studebaker truck for the sole purpose of traveling back and forth from work. Rogers was permitted to keep the truck at his residence at night and week-ends, but was specifically instructed that the truck was not to be used except for a means of transportation to and from work.

On the night of July 23, 1953, Rogers violated instructions by using the truck for his own personal pleasure. He became intoxicated, collided with a tree in the City of Jonesboro, and abandoned the vehicle. Damage to the vehicle was $169.63, and it is undisputed that the policy was in full force and effect at the time of the collision. It was stipulated also that Hubert Rogers would testify that it was his intention to return the truck, that he had no intention of keeping or stealing it.

Appellant filed a complaint in municipal court contending that the damage to his truck was caused by

larceny and seeking judgment therefor plus the statutory penalty and attorney's fee. On December 18, 1953, the municipal court found in favor of appellee and dismissed appellant's complaint. The instant appeal is from the same judgment rendered on appeal upon a trial before the circuit court sitting as a jury.

The principal issue is whether the acts of the employee, Hubert Rogers, constituted larceny or theft under the laws of Arkansas. In determining this question the policy must be interpreted according to the laws of the state in which it is issued. It is also well settled that insurance policies are to be construed strictly against the insurer. Appellant contends that the damage to his truck was occasioned by larceny, as defined by the 1953 Supplement to Ark. Stats. § 41-3929, and was therefore within the terms of the policy. This section recites: "Any person who shall lawfully obtain possession as bailee of any money, goods, vehicle, aircraft, chose in action, or property of any character or description including farm produce and livestock, whether or not such possession was obtained gratuitously or for a consideration, who shall thereafter knowingly receive, dispose of, conceal, convert, keep, or use said property as above described contrary to the provisions of the agreement or conditions under which the same shall have been obtained, shall be deemed guilty of larceny to the degree depending upon the value of the property involved as fixed by law, and upon conviction thereof shall be punished as in cases of larceny."[1]

The first question for decision is whether or not a bailment existed. In 6 Am. Jur., Bailments, § 4, in de-

[1] Prior to amendment by Act 323 of 1947 and Act 24 of 1953, the statute read: "If any carrier or other bailee shall embezzle, or convert to his own use, or make away with, or secrete with intent to embezzle, or convert to his own use, any money, goods, rights in action, property, effects or valuable security, which shall have come to his possession, or have been delivered to him, or placed under his care or custody, such bailee, although he shall not break any trunk, package, box or other thing in which he received them, shall be deemed guilty of larceny, and on conviction, shall be punished as in cases of larceny." The term "bailee" as used in this statute was held not confined to bailees of the generic class of carriers, but embraced all bailees. *Wallis* v. *State*, 54 Ark. 611, 16 S. W. 821; *Tally* v. *State*, 105 Ark. 28, 150 S. W. 110.

fining "bailment", the text recites: "In its ordinary legal signification, which conforms to modern authorities and is substantially accurate, the term may be said to import the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it." In defining the same term, in 8 C. J. S., Bailments, § 1, it is said: "It may be comprehensively defined as a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be." On the specific issue of a master's lending a car to a servant, in Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 5, § 3050, p. 419, it is said: "Where the master has loaned the car to the servant the situation is different. Such a situation constitutes a bailment, superseding the relation of master and servant, and such relation is not restored until the driver is again acting under the master's specific direction and control. A general instruction to return the car cannot be regarded as a specific direction from the master, placing the car within his control within this rule."

In *Spellman* v. *Delano*, 177 Mo. App. 28, 163 S. W. 300, the fact situation was closely analogous to the present case. There, the master lent his servant, Cook, a horse to ride to and from work, and while Cook was going from work one day the horse was killed by a train. The master sued the railroad company for the value of the horse, and the question was presented whether the contributory negligence of the servant was imputable to the master. To decide this question, the court had to determine the relation between Cook and his employer at the time of the accident, and in discussing this the court said: "Was Cook, at the time the horse was injured, the servant of plaintiff? He was not. He worked

for plaintiff by the day, and the relation of master and servant terminated each day when the day's work ended. Plaintiff had no control over Cook after 6 o'clock. What he did from that time until he returned to work again, between 7 and 8 the next morning, was no concern of plaintiff's. Indeed, he could not legally require Cook to return to work next morning, since the hiring was by the day, and Cook was only paid for the days he worked. Plaintiff was under no obligation to transport Cook to and from his place of labor. His lending the horse to Cook was no part of the contract between them. It was done only when Cook requested it, and was then only a gratuitous favor which plaintiff could withhold or not, as he chose. But the real test as to whether Cook was a servant of plaintiff at the time of the accident is whether the former was at that time subject to the latter's orders and control. Wood on Master and Servant, § 317; *Atherton* v. *K. C. Coal Co.*, 106 Mo. App. 591, 81 S. W. 223. He was not. Consequently the relation between them was not that of master and servant, but was that of bailor and bailee.''

We conclude that a bailment existed in the instant case, and that Rogers was a bailee at the time appellant's truck was damaged. Did the acts of Rogers which occasioned the damage to appellant's truck fall within the statutory definition of larceny by bailee as set out in § 41-3929, *supra?* A situation somewhat analogous to the case at bar was presented in *Central Surety Fire Corporation* v. *Williams*, 213 Ark. 600, 211 S. W. 2d 891, in which this court construed a statute which provided certain acts would be deemed larceny. In that case appellee was insured against loss of his automobile by ''theft, larceny, robbery or pilferage.'' A swindler gave appellee a worthless check in payment for the car, and appellee delivered to him the car with a bill of sale. When the check was discovered to be worthless, appellee sued the insurance company on the policy, claiming he had lost his car through larceny; the insurance company argued that the swindler was guilty only of false pretense, not larceny. This court said: ''Even if Martin [the swindler] was guilty only of false pretense, still

—under our statute [§ 3073, Pope's Digest]—such false pretense is deemed to be larceny . . .

"One guilty of the statutory crime of false pretense is deemed—or adjudged—'guilty of larceny and punished accordingly.' By the plain wording of our false pretense statute, the person guilty of its violation is adjudged guilty of *larceny*. The wording of our statute brings the act of Martin within the policy coverage of the insurance company, i. e., larceny."

Other states have enacted so-called "joy-ride" statutes similar to § 41-3929. In *Block, et al.* v. *Standard Insurance Company of New York*, 292 N. Y. 270, 54 N. E. 2d 821,[2] a car owner was driven by his chauffeur to a hotel, and, not needing the car any more that day, the owner gave the chauffeur permission to drive the car to the place where the chauffeur was spending the night, expressly forbidding him to go joy-riding in the car. The chauffeur disobeyed his instructions and wrecked the car. The car was covered by insurance which insured the owner against "Loss or damage to the Automobile caused by Larceny, Robbery or Pilferage." In holding that the owner could recover from the insurance company under a statute similar to § 41-3929, the court said: ". . . The average automobile owner knows that the taking of an automobile in manner such as was done here constitutes the crime of larceny. His legislative representative voted for that enactment. The newspaper he reads contains reports of unauthorized temporary appropriations of automobiles and both he and the newspapers now use the word joy-ride as a definition of such an act. Such act is larceny and is so considered by the average man whether or not he is the owner of an automobile." See also, *Pennsylvania Indemnity Fire Corporation* v. *Aldridge*, (D. C.) 117 F. 2d 774.

In support of the judgment, appellee relies on the case of *Export Insurance Co.* v. *Royster*, 177 Ark. 899, 8 S. W. 2d 468, where this court held that it is necessary

---

2 This case is to be distinguished from *Van Vechten* v. *American Eagle Fire Insurance Company*, 239 N. Y. 303, 146 N. E. 432, where the company insured against "theft, robbery or pilferage."

to show that there was an intent to convert the property to the use of the taker to constitute larceny. This case was decided prior to the 1947 and 1953 amendments which resulted in § 41-3929, *supra*. At that time the statute provided that there exist an intent to convert to the taker's use. This provision was eliminated by the 1947 amendment. In that case the policy covered loss by "theft, robbery or pilferage" and the alleged thief was not in the employ of the assured but was employed at a garage where the car was stored.

In enacting § 41-3929, the Legislature defined larceny by bailee as including the use of a bailed vehicle contrary to the provisions of the agreement or conditions under which it was obtained. The intention to convert to the use of the taker was significantly omitted from the amended statute, and it is clear that such intent is not now necessary in this state where the taking falls within the provisions of said section. Under the undisputed testimony in the case at bar the acts of Hubert Rogers clearly fall within the definition of, and constitute, larceny as set out in the statute.

The judgment is accordingly reversed and the cause remanded with directions to enter judgment in favor of appellant for the stipulated damage plus the statutory penalty and a reasonable attorney's fee.