# WILLIAM R. DeJARNETTE v. FEDERAL KEMPER INSURANCE COMPANY

[No. 1096, September Term, 1982.]

*Decided November 8, 1982.*

The cause was argued before WILNER, GARRITY and ADKINS, JJ.

*John Amato, IV,* with whom were *Francis J. Meagher* and *Goodman, Meagher & Enoch* on the brief, for appellant.

*Frank X. Gallagher* for appellee.

ADKINS, J., delivered the opinion of the Court.

On April 4, 1981, appellant William R. DeJarnette, Jr., was riding as a passenger on a motorcycle owned and operated by Timothy James Smith. The motorcycle went out of control and overturned, causing injuries to DeJarnette, with consequent medical expenses and loss of earnings. The insurance policy covering the Smith motorcycle provided no personal injury protection (PIP) coverage, but at the time of the accident, DeJarnette was a member of the household of his father-in-law, James S. Angel, Sr. Angel was insured under an automobile liability policy issued by appellee Federal Kemper Insurance Company.

DeJarnette presented a claim under the PIP provisions of Angel's policy, which required Federal Kemper to pay medical expense and income continuation benefits "incurred because of bodily injury caused by accident and involving a motor vehicle" but which excluded from PIP coverage

    (a) bodily injury sustained by a person

* * * *

    (4) arising out of the ownership, mainte-
    nance, or use of a motorcycle . . . by such
    person.

When Federal Kemper denied the claim on the basis of the exclusion, DeJarnette sued Federal Kemper. Both parties moved for summary judgment. The Superior Court of Baltimore City granted Federal Kemper's motion and entered judgment for it on June 30, 1982.

In this expedited appeal from that judgment, DeJarnette argues that:

1. As a passenger, he was not "using" the motorcycle; thus the injuries he sustained did not arise out of the "use" of the motorcycle by him; and

2. If he were "using" the motorcycle within the meaning of the exclusion, the exclusion is invalid because not authorized by Code, Art. 48A, § 545.

## Is a Passenger on a Motorcycle "Using" It?

DeJarnette, claiming that the word "use" is ambiguous, says that this provision of the exclusion should be liberally construed in favor of the insured against the drafter of the policy, *Aviation Emp. Ins. Co. v. Barclay*, 237 Md. 318, 206 A.2d 119 (1965). So construed, he argues, the word "use" should apply only to a passenger who had some degree of direction or control over the vehicle, as opposed to a passenger who was merely present in (or on) the vehicle, as was the case here. He also cites *Maryland Indemnity Co. v. Kornke*, 21 Md. App. 178, 319 A.2d 603 (1979) as holding that "actual use" of an automobile, for purposes of an omnibus clause, applies to a person riding in a vehicle only when the passenger retains immediate direction and control over the vehicle's operation.

It is no doubt true, as noted in *Kornke*, that the meaning of words such as "use" or "actual use" have been frequently litigated. *Id.,* at 181, 319 A.2d at 605. The Court of Appeals made a similar observation in *American Home Assurance Co. v. Erie Ins. Exchange*, 252 Md. 116, 120, 248 A.2d 887, 889 (1969) but at the same time held that "[i]n the interpretation of the language of insurance contracts, words are to be given their customary and normal meaning." *Id.* at 121, 248 A.2d at 890. We shall follow that course of action here.

*Kornke, supra,* does not support DeJarnette's position. The issue in that case was whether coverage under an omnibus clause extended to a "second permittee". In that context — deciding whether there was "actual use . . . with

the permission of" the named insured — it was relevant, indeed critical, that the passenger (the "first permittee") had retained some degree of control over the operation of the vehicle, so that it could be said that the driver (the "second permittee") was using the vehicle "with the permission of" the named insured. To the same effect is *Hardware Mutual Cas. Co. v. Mitnick,* 180 Md. 604, 26 A.2d 393 (1942). Neither of these cases holds that the unmodified noun "use" requires the "user" to be in control of the vehicle.

In *Melvin v. American Auto Ins. Co.,* 232 Md. 476, 194 A.2d 269 (1963) the issue was whether the passenger was a "person . . . legally responsible for the use of . . . an automobile . . . not owned . . . by such person. . . ." *Id.* at 478, 194 A.2d at 271. In that context, too, the issue of direction and control was important. In any event, the Court of Appeals in *Melvin* did not hold that in all cases "actual use" of a vehicle by a passenger could be found only when the passenger exercised some direction and control. It held only that there was "actual use" in that case when the passenger did in fact exercise direction and control. Indeed, the court pointed out that "use and operation are not synonymous." *Id.* at 480, 194 A.2d at 272.

If this is so, it would not appear necessary to confine "use" on the facts of this case to a situation in which the user/passenger is exercising some control over the driver. The common understanding of the unmodified word "use" indicates otherwise. A passenger "uses" a bus or train, for example, without any exercise of control over its operation. *The American Heritage Dictionary of the English Language* 1410 (1970) defines "use" as "the application of or employment of something for some purpose." *The New Webster Encyclopedia Dictionary of the English Language* 924 (1952) defines the word as "to employ or make use of." DeJarnette was certainly employing the motorcycle for the purpose of riding on it.

This broad, but common sense definition of the noun "use" was applied in *Home Indemnity Co. v. Lively,* 353 F.Supp.

1191, 1194 (W.D. Okla. 1972). In that case, a passenger in a car, who apparently had no control over its operation, threw a pop bottle out of it, injuring a by-stander. For purposes of insurance coverage, the court held that the passenger was using the car. To the same effect is *National Union Insurance Co. of Pittsburgh v. Bruekes,* 179 Neb. 642, 647-648, 139 N.W.2d 821, 826 (1966).

We find the reasoning of these cases persuasive, and hold that DeJarnette's injuries arose "out of the . . . use of a motorcycle by" him. His claim is, therefore, barred by the policy exclusion unless that exclusion is invalid.

### The Validity of the Exclusion

A provision of an automobile liability policy which is in conflict with the statute regulating such policies is invalid, *Pennsylvania Natl. Mut. Cas. Ins. Co. v. Gartelman,* 288 Md. 151, 416 A.2d 734 (1980). Article 48A, § 539 of the Annotated Code provides, in pertinent part:

> No policy of motor vehicle liability insurance shall be issued, sold or delivered in this State after January 1, 1973, unless the policy . . . affords the minimum medical, hospital and disability benefits set forth herein. . . . The benefits . . . shall cover the named insured and members of his family residing in his household . . . injured in any motor vehicle accident . . ., other persons injured while occupying the insured motor vehicle as a guest or passenger, or while using it with the express or implied permission of the named insured . . . and pedestrians injured in an accident in which the insured motor vehicle is involved and individuals injured in, on, or alighting from any other vehicle . . . in an accident in which an insured vehicle is involved.

As the Court of Appeals observed in *Gartelman, supra,* this statute evidences a legislative policy which

has the overall remedial purpose of protecting the public by assuming that the operators and owners of motor vehicles are financially able to pay compensation for damages resulting from motor vehicle accidents. . . . Every such insurance policy must provide PIP coverage. . . . The primary purpose of this requirement is to assure financial compensation to victims of motor vehicle accidents without regard to the fault of . . . persons entitled to PIP benefits. *Id.* at 154, 416 A.2d at 736.

Despite this broad legislative policy, the General Assembly provided for certain exclusions from the requirements of § 539. Section 545, at the time of DeJarnette's accident, provided:

The coverages prescribed under § 539 of this article may exclude from benefits thereunder any person otherwise injured under the policy who:

(a) Intentionally causes the accident resulting in the injury, or

(b) Is injured while operating or voluntarily riding in a vehicle known by him to be stolen, or

(c) Is injured while in the commission of a felony or while in violation of § 21-904 of the Transportation Article.

(d) With respect to motorcycles, economic loss benefits required under § 539 may be excluded, or may be offered with deductibles, options, or with specific exclusions.

By Chapter 573, Acts of 1982, the section was amended (perhaps in partial recognition of the grammatical problems presented by the earlier version) to read

(a) The coverages prescribed under § 539 of this article may exclude from benefits thereunder any person otherwise insured under the policy who:

(1) Intentionally causes the accident resulting in the injury, or

(2) Is injured while operating or voluntarily riding in a vehicle known by him to be stolen, or

(3) Is injured while in the commission of a felony or while in violation of § 21-904 of the Transportation Article, or

(4) Is a pedestrian injured in an accident outside of Maryland and is not a resident of Maryland. [added by the 1982 law]

(b) With respect to motorcycles, economic loss benefits required under § 539 may be excluded, or may be offered with deductibles, options or with specific exclusions.

(c) [A new substantive provision not material to this case].

In both versions (the meaning comes through more clearly in the 1982 rendition) the statute begins by permitting exclusion of § 539 coverage with respect to certain persons, for the most part persons deemed unworthy of protection because of their engagement in anti-social activities. The focus then shifts from persons to a class of vehicles: motorcycles. As provided in § 545 (d) (pre-1982) and § 545 (b) (current law): "With respect to motorcycles, economic loss [PIP] benefits required under § 539 may be excluded, or may be offered with deductibles, options, or with specific exclusions."

So far as the motorcycle exclusion is concerned, we find that the 1982 amendment effected no substantive change. It merely expressed the legislative intention in somewhat clearer, more grammatical language. The purport of that intention is clear; it is, and was, to permit an insurer to exclude motorcycles, and hence those occupying them as drivers or passengers, from PIP coverage.

In *Speakman v. State Farm Mutual Automobile Ins. Co.,* 42 Md. App. 666, 402 A.2d 123 (1979) we held that Article

48A, § 545 "permits the exclusion by insurance companies in automobile insurance policies of PIP benefits to persons injured on a motorcycle in an accident with another motor vehicle." *Id.* at 669, 402 A.2d at 125. We now hold that the same provision permits the exclusion by insurance companies in automobile insurance policies of PIP benefits to persons injured on a motorcycle in an accident where no other motor vehicle is involved.

Whether that policy is wise (in light of the special insurance risks that motorcycle use may involve) or unwise (because of possible unfairness to motorcycle passengers who are not owners and thus not in a position to bargain for coverage) is not for us to decide.[1] Nor do we decide (as the court did not in *Speakman*) what the result might be if a pedestrian were injured by a motorcycle, the operator of which had procured a policy subject to a similar exclusion. We only apply to the facts of this case the plain language of the statute as enacted by the General Assembly.

> *Judgment affirmed.*
> *Appellant to pay the costs.*

---

1. The motorcycle exclusion provision was added to HB 444 of 1972 (which became Ch. 73 of the Acts of that year) on March 27, 1972, by floor amendment; 1972 Md. House Journal 1719. There appears to be no recorded "legislative history" to explain its purposes. We note, however, that the 1982 amendment of § 545 did not modify the substance of the motorcycle provision, thus indicating apparent acquiescence in our construction of it in Speakman, supra. Macke Co. v. St. Dep't of Assess. & T., 264 Md. 121, 132-133, 285 A.2d 593, 598-599 (1972); Jackson v. Jackson, 13 Md. App. 725, 731, 284 A.2d 654, 657 (1971); 2A Sutherland, Statutes and Statutory Construction § 49.09 (C. Sands ed. 1973).