475 A.2d 454

**William R. DeJARNETTE**

v.

**FEDERAL KEMPER INSURANCE COMPANY.**

**No. 15, Sept. Term, 1983.**

Court of Appeals of Maryland.

June 1, 1984.

Motion for Reconsideration Denied July 10, 1984.

John Amato, IV, Baltimore (Francis J. Meagher and Goodman, Meagher & Enoch, Baltimore, on brief), for appellant.

D. William Brooke, Baltimore (Frank X. Gallagher, Baltimore; on brief), for appellee.

Reargued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, DAVIDSON and COUCH, JJ., and CHARLES E. ORTH, Jr., retired, Specially Assigned Judge.

COUCH, Judge.

At issue in this case is a motor vehicle liability policy excluding personal injury protection (PIP) coverage for injuries sustained in a motorcycle accident.

The facts of the case are undisputed. William R. DeJarnette, Jr. was riding on a motorcycle as a passenger. The motorcycle went out of control and overturned. As a result of the incident DeJarnette suffered injuries with consequent medical expenses and loss of earnings. At the time of the accident the motorcycle was owned and operated by Timothy James Smith. There was no personal injury protection (PIP) coverage provided in the policy covering the Smith vehicle. However, as a member of his father-in-law's household appellant was insured under an automobile liability policy issued by the appellee, Federal Kemper Insurance Company.

Appellant presented a claim under the PIP provisions of his father-in-law's insurance policy. Appellee denied the claim on the basis of a "use of motorcycle" exclusion contained in the policy.[1] Thereafter, appellant filed suit in the Superior Court of Baltimore City seeking coverage for his damages under the Kemper policy. Appellant and appellee filed Motions for Summary Judgment. The court denied appellant's motion, and granted appellee's cross motion for summary judgment. Appellant appealed to the Court of Special Appeals. The Court affirmed the ruling below. 53 Md.App. 47, 451 A.2d 1274 (1982). Appellant filed a Motion for Reconsideration. The Court granted same and modified its opinion—but the decision affirming

---

**1.** The pertinent text of the policy exclusion clause was as follows:
"PERSONAL INJURY PROTECTION COVERAGE
 \* \* \* \* \* \*
Exclusions
This insurance does not apply:
(a) to bodily injury sustained by any person
 \* \* \* \* \* \*
(4) arising out of the ownership, maintenance, or use of a motorcycle or motorbike, by such person; ...."

the ruling below was left unchanged. *Id.* For the reasons stated herein we shall affirm.

Appellant raises two arguments before this Court:

1) Under Maryland law a passenger does not "use" a vehicle, thus, the motorcycle exclusion does not apply in this instance.

2) If such an exclusion were to apply, the exclusion is invalid because it goes beyond the statutory permitted exclusions of PIP benefits under Maryland Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.), Art. 48A, § 545.

(1)

Appellant contends that riding on a motorcycle, as a guest passenger, does not constitute a "use" of the motorcycle. That one can only be said to use a motorcycle as a passenger, if that person exercises direction or control over the operator. Appellant principally relies on *Hardware Mutual Casualty v. Mitnick*, 180 Md. 604, 26 A.2d 393 (1942), and *Maryland Indemnity Insurance Co. v. Kornke*, 21 Md.App. 178, 319 A.2d 603 (1974), to support his contention. However, since those cases were decided in a different context we do not find them persuasive on this narrow issue.

In *Mitnick* and *Kornke* the clause at issue was not an exclusion, but rather an omnibus clause which reflects as its dominant purpose an intent to extend coverage. An omnibus clause must be liberally construed in favor of the insured. Coverage under the insurance policies in *Mitnick* and *Kornke* extended to " 'any person ... using the automobile * * * with the permission of the named insured.' " *Mitnick*, 180 Md. at 607, 26 A.2d at 394; *Kornke*, 21 Md.App. at 180, 319 A.2d at 605. In each case the drivers involved in an accident were not the persons originally given permission to drive by the named insured. The controversy was whether a passenger who exercised control and direction over the operation of the automobile, but who was not the operator, used the vehicle within the meaning

of the policy clause in order to extend coverage to the driver of the vehicle.

In *Kornke,* the Court of Special Appeals held that the passenger (the first permittee) was using the car even though another was driving and that the " 'actual use' was with ... permission ... [since] operation of the car by the second permittee was for a purpose germane to the permission granted." *Id.* at 193, 319 A.2d at 612. In *Mitnick,* this Court found actual use with permission where a borrower makes "use of it by riding while driven by another. [At least where the passenger is] 'still the director of the enterprise, still the custodian of the instrumentality confided to "her" keeping, still the master of the ship.' " *Id.* at 607, 26 A.2d at 394 (citation omitted). Our interpretation of these cases do not support appellant's argument. The cases only indicate that on the facts before the Court, the ordinary accepted meaning of using a motor vehicle would include situations where the operation was within the scope of permission granted, or where the passenger remained in control. The cases do not address the issue presented in the instant case, nor compel a finding that one must maintain direction and control in order to use a motor vehicle.

Appellant further attempts to bolster his argument by relying on *Melvin v. American Automobile Insurance Co.,* 232 Md. 476, 194 A.2d 269 (1963), by stating that *Melvin* cannot be distinguished from the instant case. We do not agree that *Melvin* is controlling. *Melvin* involved the same issues as *Mitnick* and *Kornke,* only the policy language was different. The question before the Court was whether the non-owner driver was an insured within the language of the policy. The policy afforded coverage to "[a]ny other person ... legally responsible for the use of ... an automobile ... not owned ... by such person ... provided the actual use thereof is by ... an insured...." *Melvin, supra,* at 478, 194 A.2d at 271. The Court did not hold, as appellant contends, that in all cases "actual use" of a

vehicle by a passenger can only be found where there is direction and control. The Court merely refused to "limit the meaning of the words 'actual use' to the operation of a vehicle, where [under the facts of the case] the operator is the agent or servant of another and subject to his immediate and present direction and control." *Id.* at 478–79, 194 A.2d at 271.

Clearly, these three cases are not controlling on the instant case as the courts were not defining "use" of a motor vehicle but rather "actual use" and "actual use with permission." In the case *sub judice,* we are not concerned with "actual use" or scope of permission since no such wording appears in the insurance policy clause before us. The previous decisions do not preclude a finding of use on the facts of this case. As we stated in *Melvin,* operation and use are not synonymous. *Id.* at 480, 194 A.2d at 272. Use has been held to be a broad catchall encompassing both operating and riding. *State Farm Mutual Automobile Insurance Co. v. Pan American Insurance Co.,* 437 S.W.2d 542 (Tex.1969).

■ Appellant further contends that the natural or general meaning of the word "use" is limited by the terms in the statute. Maryland Code (1957, 1979 Repl.Vol., 1983 Cum. Supp.), Article 48A, § 539(a).[2] While § 539 does make a

---

2. Maryland Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.), Article 48A, § 539(a), provides in pertinent part:

"(a) No policy of motor vehicle liability insurance shall be issued, sold or delivered in this State after January 1, 1973, unless the policy also affords the minimum medical, hospital and disability benefits set forth herein; or unless equivalent medical, hospital, and disability benefits are provided by a policy issued to the insured by a nonprofit health service plan or by an authorized insurer with the policy in each case subject to approval by the Commissioner. The benefits, or their equivalent, shall cover the named insured and members of his family residing in his household (except such persons as may be specifically excluded in accordance with § 240C–1 of this article) injured in any motor vehicle accident (including an accident involving an uninsured motor vehicle or a motor vehicle whose identity cannot be ascertained), other persons injured while occupying the insured motor vehicle as a guest or passenger, or while using it with the express or

distinction between "occupying the insured vehicle as a guest or passenger [and] using it with ... permission" *id.*, we are not convinced this controls the issue before us, for several reasons.

First, the occupying and using language pertains to accidents in an insured vehicle. In the instant case the insured vehicle was not involved in the accident. Appellant derives his coverage from that portion of § 539 that prescribes benefits to the "named insured and members of his family residing in his household ... injured in any motor vehicle accident...." *Id.*

■ Second, neither occupy or use is contained in the definition section of the statute. Maryland Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.), Article 48A, § 538. Neither are they defined in the Transportation Article § 11–101, *et seq.* "We have repeatedly stated that where the legislature has chosen not to define a term used in a statute, that term should, ... be given its ordinary and natural meaning." *Brown v. State*, 285 Md. 469, 474, 403 A.2d 788, 791 (1979); *Mauzy v. Hornbeck*, 285 Md. 84, 400 A.2d 1091 (1979); *Williams v. Loyola College*, 257 Md. 316, 263 A.2d 5 (1970). By not defining these words in the statute, there is nothing to indicate the legislature "intended to express a technical meaning." *State Tax Commission v. Allied Mortgage Companies*, 175 Md. 357, 360, 2 A.2d 399, 400 (1938).

■ Third, § 539 merely provides for coverage in general terms. Section 545, which permits exclusions from benefits required under § 539, however, is more specific.[3] Al-

---

implied permission of the named insured (except as provided in § 240C–1 of this article), and pedestrians injured in an accident in which the insured motor vehicle is involved or individuals injured in, on, or alighting from any other vehicle operated by animal or muscular power in an accident in which an insured vehicle is involved...."

**3.** § 545. Exclusions

though various parts of a statute should be construed to give effect to all of the parts it is a cardinal rule of statutory construction that specific terms prevail over the general language of a statute. *Baltimore National Bank v. State Tax Commission of Maryland*, 297 U.S. 209, 56 S.Ct. 417, 80 L.Ed. 586 (1936); *United States v. Milk Distributors Association, Inc.*, 200 F.Supp. 792 (D.Md. 1961); *Rafferty v. Comptroller*, 228 Md. 153, 178 A.2d 896 (1962); *Montgomery County v. Lindsay*, 50 Md.App. 675, 440 A.2d 411 (1982). As further support for our finding that § 539 language does not control § 545, we find the terms the legislature chose to employ in § 545 do not conform to the terms used in § 539. For example, § 545(a)(2) permits an exclusion for injury "while operating or voluntarily riding in a vehicle known ... to be stolen." *Id.* If the language in § 539 was intended to control this section, as appellant contends, it would read—is injured while operating or occupying as a guest or passenger a vehicle known by him to be stolen. Similarly, sections (a)(1) and (3) make no reference to occupy or operate and yet the intent of the legislature is clear and unambiguous. While providing for a specific exclusion of motorcycle coverage, § 545 does not set forth any specific language that must be

---

"(a) The coverages prescribed under § 539 of this article may exclude from benefits thereunder any person otherwise insured under the policy who:

(1) Intentionally causes the accident resulting in the injury, or

(2) Is injured while operating or voluntarily riding in a vehicle known by him to be stolen, or

(3) Is injured while in the commission of a felony or while in violation of § 21–904 of the Transportation Article, or

(4) Is a pedestrian injured in an accident outside of Maryland and is not a resident of Maryland.

(b) With respect to motorcycles, economic loss benefits required under § 539 may be excluded, or may be offered with deductibles, options or with specific exclusions.

(c) The insurer may exclude from the coverage prescribed in § 539 benefits for the named insured or members of his family residing in the household when occupying an uninsured motor vehicle that is owned by the named insured or a member of his immediate family residing in his household. (1972, ch. 73, § 1; 1977, ch. 765, § 13; 1982, ch. 573, § 2.)"

used or even that could be used in drafting an insurance clause. Rather, as we read the statute, it leaves the wording of the motorcycle exclusion to the insurance company depending on the extent of the exclusion included in that particular policy.

We now turn our attention to the policy in question. Appellant contends the policy was written to conform to the statute and therefore the statutory language limits or qualifies the word "use" in the policy. Section (a) of the policy lists four exclusions.[4] The language of (1), (2), and (3) is similar to that used in § 545 of the statute. Section (4) relating to motorcycle exclusions, however, is not similar to the statutory language. As discussed previously, this is because the statute only allows for the policy to be written to include motorcycle exclusions with alternatives; no specific language is suggested by § 545(b). The insurance company chose to exclude coverage for bodily injury sustained by any person "arising out of ownership, maintenance, or use of a motorcycle ..., by such person." This is standard phraseology found in insurance policies. *St. Paul Fire & Marine Insurance Co. v. Thomas*, 273 So.2d 117 (Fla.App.1973). . That appellee chose not to use the words operate and occupy, and the fact that the policy defines occupy and does not define use,[5] does not make the clause

---

**4.** The applicable section of the policy is as follows:
"EXCLUSIONS
This insurance does not apply:
(a) to bodily injury sustained by any person
 (1) who intentionally causes the motor vehicle accident; or
 (2) while operating or voluntarily riding in a motor vehicle known by him to be stolen; or
 (3) while in the commission of a felony or fleeing or attempting to elude a police officer; or
 (4) arising out of the ownership, maintenance, or use of a motorcycle or motorbike, by such person."

**5.** "DEFINITIONS
When used in reference to this insurance:
'bodily injury' means bodily injury, sickness or disease, including death resulting therefrom;

ambiguous. Neither occupy nor operate appear in the clause, both can be encompassed within the word use. Appellant attempts to create an ambiguity where none exists in order by construction to resolve it in his favor.

'essential services benefits' means reimbursement for necessary and reasonable payments made to others, not members of the injured person's household, incurred within three years from the date of the accident for essential services ordinarily performed by the injured person, for care and maintenance of his family or family household;

'funeral services' means funeral, burial, or cremation services;

'income' means wages, salary, tips, commissions, professional fees, and other earnings from businesses or farms owned individually or jointly or in partnership with others, and to the extent that any such earnings are paid or payable in property or services other than cash, income means the reasonable value of such property or services;

'income continuation benefits' means payment for loss of income incurred within three years from the date of the accident;

'income producer' means a person who at the time of the accident was in an occupational status where he was earning or producing income;

'injured person' means

(a) the named insured or any relative who sustains bodily injury in any motor vehicle accident;

(b) any other person who sustains bodily injury (1) while occupying the insured motor vehicle as a guest or passenger, or (2) while using the insured motor vehicle with the express or implied consent of the named insured, or (3) while a pedestrian through being struck by the insured motor vehicle;

'insured motor vehicle' means a motor vehicle of which the named insured is the owner, to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged;

'medical expense benefits' means payment for all reasonable expenses arising from the accident and incurred within three years from the date of the accident for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, and professional nursing services and funeral services;

'motor vehicle' means an automobile and any other vehicle, including a trailer, operated or designed for operation upon a public road by any power other than animal or muscular power;

'named insured' means the person or organization named in the declarations and if an individual, includes his spouse if a resident of the same household;

'occupying' means in or upon or entering into or alighting from;

'relative' means a person related to the named insured by blood, marriage or adoption who is a resident of the same household, and includes the named insured's unmarried and unemancipated children, while away from his household attending school or while in military service."

Appellant seeks to read the term use of a motorcycle, as contained in the policy, as the equivalent of use with control and direction, or operation, and on this premise argues that appellant was not using the motorcycle. However, where there is no ambiguity in an insurance contract, the court has no alternative but to enforce the policy's terms. A strained or unreasonable construction of the policy language should not be indulged in. *Scherschlight v. Empire Fire & Marine Insurance Co.*, 494 F.Supp. 936 (D.S.D.1980), *aff'd*, 662 F.2d 470 (8th Cir.1981). In interpreting the language of insurance contracts, words are to be given their customary, normal menaing. *American Home Assurance Co. v. Erie Insurance Exchange*, 252 Md. 116, 248 A.2d 887 (1969); *Offutt v. Liberty Mutual Insurance Co.*, 251 Md. 262, 247 A.2d 272 (1968). "It is perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or by another." *Maryland Casualty Company v. Marshbank*, 226 F.2d 637, 639 (3d Cir.1955); *National Union Fire Insurance Co. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 (1966); *Motor Club Fire & Casualty Co. v. New Jersey Manufacturers Insurance Co.*, 73 N.J. 425, 375 A.2d 639 (1977), *cert. denied*, 434 U.S. 923, 98 S.Ct. 402, 54 L.Ed.2d 281 (1977); *Commonwealth v. Giannino*, 371 Mass. 700, 358 N.E.2d 1008 (1977); *Orrill v. Garrett*, 100 Ill.App.2d 194, 241 N.E.2d 1 (1968); *Metcalf v. Hartford Accident & Indemnity Co.*, 176 Neb. 468, 126 N.W.2d 471 (1964); *Bolton v. North River Insurance Co.*, 102 So.2d 544 (La.Ct.App.1958).

In *Home Indemnity Co. v. Lively*, 353 F.Supp. 1191 (W.D.Okl.1972), the court held "that a passenger in a car as distinguished from the driver thereof may be using the vehicle" under the terms of the policy. Id. at 1193. To the same effect is *National Union Fire Insurance Co. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 (1966), where the policy in question afforded liability coverage to any person for injury "arising out of ownership, maintenance or use." *Id.* at 825. We think this is the correct rule as the term "use" usually is construed to include all proper uses of an

automobile. 6B J. Appleman, Insurance Law & Practice, § 4316 (1979). Riding a motorcycle is a proper use of a motor vehicle.

 There are numerous cases from other jurisdictions construing the phrase "arising out of the use of a motor vehicle." The courts uniformly require that there be a causal connection between the use of the motor vehicle and the injury in order to impose liability. *National Indemnity Co. v. Ewing,* 235 Md. 145, 200 A.2d 680 (1964); *Wyoming Farm Bureau Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 467 F.2d 990 (10th Cir. 1972).[6] Where the vehicle is merely the situs of the injury and the injury is entirely the result of an independent cause, in no way related to the use of the vehicle, recovery under the policy is denied. *St. Paul Fire & Marine Insurance Co. v. Thomas, supra.*[7]

 We find the reasoning of these cases persuasive. In this instance the causal connection between the injury and the use of the motorcycle is not contested. Therefore, we hold appellant did sustain injuries arising out of the use of a motor vehicle. The policy exclusion, therefore, is applicable if it is not invalid.

### (2)

The next issue presented by this appeal is whether the policy exclusion falls within the statutory permitted exclusion of section 545(b). Section 545(b) states:

---

**6.** See also *Transamerica Insurance Group v. United Pacific Insurance Co.,* 92 Wash.2d 21, 593 P.2d 156 (1979), and cases cited therein.

**7.** The *St. Paul* case was decided under a homeowners policy that excluded coverage arising out of use of an automobile. The Court held the injury did not arise out of the use of an automobile since the automobile was only "the situs of his physical being at the time. His liability arose out of negligently throwing the bottle in the roadway." *Id.* at 121; *see also United States Fidelity & Guaranty Co. v. Western Fire Insurance Co.,* 450 S.W.2d 491 (Ky.1970) *Brenner v. Aetna Insurance Co.,* 8 Ariz.App. 272, 445 P.2d 474 (1968).

"With respect to motorcycles, economic loss benefits required under § 539 may be excluded, or may be offered with deductibles, options or with specific exclusions."

Given the clear language of the statute appellant concedes that under the statute PIP benefits can be excluded, or offered with deductibles, options or specific exclusions with respect to motorcycles. However, as we understand his argument, it is twofold. First, he contends the insurance policy exclusion as applied to DeJarnette is invalid because the options and deductibles have no meaning for non-owner passengers who are not in a position to bargain for coverage. Second, he contends the exclusion goes beyond the statutory permitted exclusions since it applies to other than the named insured.

(a)

We find appellant's first argument to be without merit. Initially we note that he is not seeking coverage under Smith's insurance policy but rather as an additional insured under his father-in-law's policy. It is clear that under the terms of that policy, if the named insured had been injured under the same circumstances, he could not recover. In choosing to bring himself under his father-in-law's insurance policy he seeks a greater degree of coverage than the named insured has. We can find no case on this issue previously decided by this Court, and appellant cites none. Our research does, however, lead us to agree with courts of other jurisdictions that have considered this issue. The general rule seems to be that the additional insured is subject to the policy limitations and exceptions and his rights can be no greater than the rights of the named insured. *Tidewater Equipment v. Reliance Insurance Co.,* 650 F.2d 503 (4th Cir.1981); *Hanover Insurance Co., Massachusetts Bonding Department v. Travelers Indemnity Co.,* 318 F.2d 306 (8th Cir.1963); *Wheeler v. State Farm Mutual Automobile Insurance Co.,* 311 F.Supp. 724 (W.D.Okl.1970), *aff'd,* 438 F.2d 730 (10th Cir.1971); *Ericson v. Hill,* 109 Ga.App. 759, 137 S.E.2d 374 (1964). That is the

rule we now adopt when one is eligible for coverage as an additional insured and chooses to avail himself of that coverage. In that situation, as presented in the instant case, we hold he is subject to the policy limitations and exceptions and his rights can be no greater than the rights of the named insured.

#### (b)

 Section 545 at the time of the incident in this case provided:

"§ 545 Exclusions

The coverages prescribed under § 539 of this article may exclude from benefits thereunder any person otherwise insured under the policy who:

(a) Intentionally causes the accident resulting in the injury, or

(b) Is injured while operating or voluntarily riding in a vehicle known by him to be stolen, or

(c) Is injured while in the commission of a felony or while in violation of § 21–904 of the Transportation Article.

(d) With respect to motorcycles, economic loss benefits required under § 539 may be excluded, or may be offered with deductibles, options or with specific exclusions. (1972, ch. 73, § 1; 1977, ch. 765, § 13.)"

By Chapter 573, Acts of 1982, the section was amended. We agree with the Court of Special Appeals that the 1982 amendment effected no substantive change. "It merely expressed the legislative intention in somewhat clearer, more grammatical language." *DeJarnette v. Federal Kemper Insurance Co.,* 53 Md.App. 47, 53, 451 A.2d 1274, 1278 (1982). Therefore, it is immaterial that the July 1, 1982 effective date of the amendment is subsequent to the date of the accident. *Janda v. General Motors Corp.,* 237 Md. 161, 205 A.2d 228 (1964).

 Despite the legislative intent to make sure victims will be compensated for damages resulting from motor

vehicle accidents by mandating PIP coverage in every insurance policy, section 545 was enacted in order to permit an insurer to exclude certain activities from the requirements of § 539. Subsection (a)1–4 of § 545 relates to certain persons, otherwise covered by § 539, who engage in a particular activity. Subsection (b) focuses on a particular type of vehicle—motorcycles. Appellant contends subsection (b) should be construed to deny PIP benefits only to the named insured, who has had the opportunity to pay the added premium necessary to obtain PIP benefits on his motorcycle. Appellant relies on *Pennsylvania National Mutual Casualty Insurance Co. v. Gartelman*, 288 Md. 151, 416 A.2d 734 (1980), where Judge Davidson stated for this Court, "[w]here a statute expressly provides for certain exclusions, others shall not be inserted." *Id.* at 156, 416 A.2d at 737 (citations omitted). Although we are still in accord with the sound reasoning of *Gartelman* in light of the remedial purpose of Article 48A, §§ 538–547, we find that in this case the policy exclusion and the statute are not in conflict.

The legislature did not intend to completely exclude motorcycles from PIP coverage but simply made them subject to exclusion by the insurer by stating "benefits required under § 539 may be excluded." § 545(b). The required PIP benefits in § 539 include benefits to "the named insured and members of his family residing in his household." Reading these two sections together, as we must, we find no merit to appellant's contention that the legislature intended only the PIP benefits to the named insured to be properly excluded under § 545(b). Rather, the clear language of both § 539 and § 545 read together indicate an intention to allow motorcycle exclusions for any person covered under § 539.

We therefore hold that § 545(b) permits the exclusion by insurance companies in automobile insurance policies of PIP benefits to persons injured while using a motorcycle.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.

ELDRIDGE, Judge, dissenting:

I agree with the majority that Maryland Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.), Art. 48A, § 545(b), authorizes an insurer to exclude so-called personal injury protection coverage for injuries sustained by a passenger on a motorcycle. On the other hand, I believe that the Federal Kemper policy at issue in this case failed to do so. In my view the term "use of a motorcycle" in the policy provision, as applied to a passenger exercising no control over the vehicle, is ambiguous. The ambiguity should be resolved against Federal Kemper as the party which drafted the policy. I would, therefore, reverse.

This Court has consistently adhered to the principle that when an ambiguity exists in an insurance contract, as well as other types of contracts, the ambiguity will be resolved against the party which drafted the instrument. Thus an ambiguity in an insurance policy "is to be resolved against the company which prepared the policy and in favor of the insured." *Bond v. Pennsylvania Nat'l Mut.*, 289 Md. 379, 384, 424 A.2d 765 (1981), quoting *National Grange Mut. Ins. v. Pinkney*, 284 Md. 694, 705, 399 A.2d 877 (1979), and *Gov't Employees Insur. v. DeJames*, 256 Md. 717, 720, 261 A.2d 747 (1970). *Accord: St. Paul Fire & Mar. Ins. v. Pryseski*, 292 Md. 187, 200, 438 A.2d 282 (1981); *Truck Ins. Exch. v. Marks Rentals*, 288 Md. 428, 435, 418 A.2d 1187 (1980); *Aragona v. St. Paul Fire & Mar. Ins.*, 281 Md. 371, 375, 378 A.2d 1346 (1977); *McKoy v. Aetna Cas. & Sur. Co.*, 281 Md. 26, 31, 374 A.2d 1170 (1977); *Peoples Life Ins. Co. v. Jerrell*, 271 Md. 536, 542, 318 A.2d 519 (1974), and cases there cited.

Language in an insurance policy is ambiguous if it is reasonably susceptible of more than one meaning. *St. Paul Fire & Mar. Ins. v. Pryseski, supra*, 292 Md. at 198, 438 A.2d 282; *Truck Ins. Exch. v. Marks Rentals, supra*, 288

Md. at 433, 418 A.2d 1187. Moreover, the existence of an ambiguity is not determined by what the insurer intended its words to mean; instead, whether language is ambiguous is determined by what a reasonably prudent person would have understood the words to mean. *C & H Plumbing v. Employers Mut.*, 264 Md. 510, 515, 287 A.2d 238 (1972). Finally, the same language may be ambiguous in one context but free of ambiguity under other circumstances. *See Truck Ins. Exch. v. Marks Rentals, supra*, 288 Md. at 433, 418 A.2d 1187; *Ebert v. Millers Fire Ins. Co.*, 220 Md. 602, 610, 155 A.2d 484 (1959).

In the context of a permissible optional exclusion from the personal injury protection coverage prescribed by Art. 48A, § 539(a), for a motorcycle passenger exercising no control over the vehicle, the phrase "use of a motorcycle" is certainly not free of ambiguity.

Section 539(a) of the Insurance Code requires that automobile insurance policies issued, sold or delivered in Maryland provide coverage, regardless of fault, for medical expenses and loss of wages. The benefits under this coverage are often referred to as economic loss benefits or personal injury protection (PIP) benefits. Section 545 of the Insurance Code, which authorized the exclusion involved in this case, provides in subsection (b) as follows:

"(b) With respect to motorcycles, economic loss benefits required under § 539 may be excluded, or may be offered with deductibles, options or with specific exclusions."

Thus, § 545(b), and the exclusion in Federal Kemper's policy, specifically relate to the coverage dealt with in § 539(a). Furthermore, as the above-quoted language shows, the Legislature contemplated that an insurer, for whatever reason, might not wish to exclude entirely § 539(a) coverage with respect to motorcycles but might wish to offer only "specific exclusions."

Turning to § 539(a), the pertinent language of the provision is as follows (emphasis supplied):

"The benefits, or their equivalent, shall cover the named insured and members of his family residing in his household ... injured in any motor vehicle accident ..., other persons injured while *occupying the insured motor vehicle as a guest or passenger, or while using it* with the express or implied permission of the named insured...."

The above-quoted language clearly draws a distinction between *occupying* a vehicle as a passenger and *using* the vehicle. This was conceded by Federal Kemper's counsel during oral argument in this case. The non-operator passenger is referred to as one "occupying" the vehicle, whereas the driver is referred to as the person "using" the vehicle. In the context of § 539(a), the meaning of "use" is limited to "driving."

When language in an insurance policy is drafted in response to specific statutory provisions, and the same language also appears in those statutory provisions, it is only reasonable that a court should look to the statutes in ascertaining the meaning of the language. Even in situations where the policy was not drafted with a specific statute in mind, courts have looked to statutory definitions of words for guidance in interpreting policy language. *See Pennsylvania Indemnity Fire Corporation v. Aldridge,* 117 F.2d 774, 133 A.L.R. 914 (D.C.Cir.1941); *Sullivant v. Pennsylvania Fire Ins. Co.,* 223 Ark. 721, 268 S.W.2d 372, 374–375 (1954); *Hayes v. Financial Indemnity Co.,* 118 Cal.App.2d Supp. 883, 257 P.2d 765, 767 (1953); *Southeastern Fidelity Insurance Co. v. Fluellen,* 128 Ga.App. 877, 198 S.E.2d 407, 408–409 (1973); *St. Paul Mercury Ins. v. Tri-State Cattle,* 628 S.W.2d 844, 847 (Tex.App.), *aff'd* 638 S.W.2d 868 (Tex.1982); *P.E. Ashton Company v. Joyner,* 17 Utah 2d 162, 406 P.2d 306 (1965).

As the language in Federal Kemper's policy was drafted for the sole purpose of creating a permissible exclusion from § 539(a)'s required coverage, it is reasonable to assume that the words in the policy exclusion have the same

meaning as the words in § 539(a). At the very least, an ambiguity is created.[1]

While the majority, like Federal Kemper's counsel, acknowledges that § 539(a) makes a distinction between occupying a vehicle as a passenger and using it, the majority goes on to offer three reasons for ignoring this statutory distinction.

First, the majority asserts that "the occupying and using language pertains to accidents in an insured vehicle [and in] the instant case the insured vehicle was not involved in the accident." While true, the assertion is wholly irrelevant to the meaning of the terms "using" and "occupying" as intended by the Legislature in § 539(a).

The majority's second reason, that "neither occupy [n]or use is contained in the definition section of the statute," overlooks the fact that the Legislature employed these two different words in the same sentence and, as the majority opinion itself recognizes, the Legislature in § 539(a) drew a distinction between the two words. Long ago this Court stated that " 'when the Legislature, in the same sentence, uses different words, the courts of law will presume that they were used in order to express different ideas.' " *Parkinson v. State*, 14 Md. 184, 197, 74 Am.Dec. 522 (1859).

The majority's third argument, that "§ 539 merely provides for coverage in general terms [while §] 545 ... is more specific," again does not relate to the meaning of the word "use" in the pertinent statutory provisions. Section 545, which in subsection (b) authorizes the motorcycle exclusion from the coverage prescribed by § 539(a), does not employ any form of the verb "use." Instead, the Legislature in § 545(b) employed the broad language "[w]ith respect to motorcycles." It is only § 539(a), the basic section concerning PIP benefits, which distinguishes "using" from "occupying the insured motor vehicle as a ... passenger."

---

**1.** It is noteworthy that the Federal Kemper policy, under "EXCLUSIONS," makes specific reference to § 539.

The majority's attempt to bolster its position, by "finding that ... the terms the legislature chose to employ in § 545 do not conform to the terms used in § 539," and by its conclusion that "the § 539 language does not control § 545," is also irrelevant. The question is not which section controls; rather the issue relates to the meaning of the word "use" as employed in the pertinent statutes. In addition, the majority's claim that the terms of the two sections "do not conform" is strained. The sole example of this purported noncomformity is a suggestion of alternative language which might have been employed in § 545(a)(2), where the language actually employed by the Legislature in § 545 is not at all inconsistent with that of § 539. And again, it must be emphasized that the relevant statutory issue to be resolved is not which section governs; rather it is whether the Legislature employed the term "using" solely to refer to the operator of a motor vehicle, reserving the word "occupying" to refer to guests and passengers. Nothing in the majority opinion is persuasive that this was not the case.

In addition to the circumstance that the policy provision at issue was specifically designed to exclude § 539(a) coverage and § 539(a) employs "using" to mean only "driving," there is another reason in this case for rejecting Federal Kemper's position. Not only does the policy make reference to § 539, but the policy itself appears to adopt the limited meaning of "using," as referring solely to the vehicle's operator. In the definition section, the policy defines "injured person" as

"(b) any other person who sustains bodily injury (1) while *occupying* the insured motor vehicle as a guest or *passenger*, or (2) while *using* the insured motor vehicle with the express or implied consent of the named insured." (Emphasis added.)

Lastly, the majority cites several cases as holding that a non-directing passenger is "using" a motor vehicle within the meaning of an insurance policy. None of these cases, however, involved an interpretation of "use" in an *exclu-*

*sion* from coverage, as applied to a non-directing passenger. Other courts have held the term "use" in the context of a policy exclusion to be ambiguous, requiring resolution in favor of the insured. *See, e.g., LeJeune v. Allstate Insurance Co.,* 365 So.2d 471, 476 (La.1978). At least one court has noted "the inherent ambiguity of the term [which] ambiguity calls for a strict construction against the party who drew the contract." *Travelers Insurance Co. v. Aetna Casualty & Sur. Co.,* 491 S.W.2d 363, 365 (Tenn.1973). Moreover, none of the cases relied on by the majority involved statutory language like that of § 539(a).

Federal Kemper, in attempting to limit § 539(a) coverage, employed language which, under § 539(a), means "driver" and not "passenger." In light of this, the intent of the policy language to exclude passengers is at least ambiguous. To reiterate, "[w]e have made it clear that where an insurance company, in attempting to limit coverage, employs ambiguous language, the ambiguity will be resolved against it as the one who drafted the instrument," *Haynes v. Am. Cas. Co.,* 228 Md. 394, 400, 179 A.2d 900 (1962). *See Penn., etc., Ins. Co. v. Shirer,* 224 Md. 530, 537, 168 A.2d 525 (1961). Our cases require a reversal here.

DAVIDSON, J., has authorized me to state that she concurs with the views expressed herein.